## ST. PAUL GAS LIGHT CO. *v.* ST. PAUL.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 183. Argued March 21, 1901.—Decided April 15, 1901.

A by-law or ordinance of a municipal corporation may be such an exercise of legislative power, delegated by the legislature as a political subdivision of the State, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of the Constitution of the United States.

In this case, as no legislative act is shown to exist, from the enforcement of which an impairment of the obligations of such a contract did or could result, it follows that the record involves solely an interpretation of the contract, and therefore presents no controversy within the jurisdiction of this court.

THE charter of the St. Paul Gas Light Company was granted in 1856, and it expires in 1907. The corporation was empowered to construct a plant to supply the city of St. Paul and its inhabitants with illuminating gas. It may be-assumed, for the purposes of the question arising on this record, that the corporation discharged its duties properly under its charter, and that from the time the charter became operative the company has lighted the city in accordance with the contracts made for that purpose from time to time with the municipal authorities. The charter did not purport to engage permanently with the company for lighting the city, but provided for agreements to be entered into on that subject with the city for successive periods, and from the beginning of the charter the parties did so stipulate for a specified time, a new contract supervening upon the termination of an expired one. It may also be assumed for the purposes of this case that the rights which the corporation asserts on this record were not foreclosed by any of the contracts which it made, at different periods, with the city. The question which here arises concerns only section 9 of the charter, which is as follows:

"SEC. 9. That it shall be the duty of the St. Paul Gas Light Company to prosecute the works necessary to the lighting the the whole city and suburbs with gas, and to lay their pipes in every and all directions, whenever the board of directors shall be satisfied that the expenses thereon shall be counterbalanced by the income accruing from the sales of gas. It shall also be their duty to put the gas works into successful operation as soon as practicable: Provided, That whenever the corporation of the city of St. Paul shall, by resolution of the board of aldermen, direct lamps to be erected and lighted in the streets of the city, the company shall make contract therefor, and furnish and provide, lay, set up and keep in good repair, at their own proper expense and charge, the street posts and lamps, and their pipes and meters, all to be of the best quality of work and material now in use. In consideration whereof, the said corporation of the city shall pay quarterly to the St. Paul Gas Light Company an interest of eight per centum per annum on the amount of the sum of the original cost of said street .

lamps and lamp posts, gas meters and gas pipes, and the cost of laying and erecting the same. But said company shall not be bound to lay every pipe in such places where the proceeds from the sale of gas light would not be sufficient to defray the expenses of furnishing the same."

Under the foregoing section the gas company, by direction of the city, constructed street lamps, and up to January 1, 1897, they numbered 3362. The interest on the cost of these lamps, at the rate fixed by section 9, was regularly paid by the city up to January 1, 1897. About, or shortly after that date, in certain portions of the city, the use of electricity for lighting the streets was by direction of the municipality substituted for gas, and hence the street gas lamps in those portions of the city which were lighted by electricity were no longer used. It is fairly to be deduced from the record that either by its original charter or by amendments thereto the gas company was empowered to supply electricity as well as gas, and in virtue of this power it constructed an electrical plant and contracted with the city to supply the electric lights in those portions of the city where the use of gas had been dispensed with. The gas company asserted its right to recover from the city the interest on the cost of placing in position the lamps, the use of which had been discontinued under the circumstances just above stated. The city denied its obligation to pay interest on account of the cost of these lamps. As the result of this disagreement the city, in 1897, passed the following ordinance:

" Resolved, That the St. Paul Gas Light Company be and it is hereby required forthwith to remove the gas street lamp posts in that portion of the city now lighted by electric light under contract with said company, and which said lamps have been discontinued by order of the board of public works.

" Resolved, further, That the board of public works is hereby required to transmit to the city comptroller a statement showing the number and location of said gas street lamp posts not now in service in said electric light district above referred to, and that from and after the passage of this resolution no interest be paid by the city of St. Paul to said St. Paul Gas Light

Company on account of the cost of the purchase and equipment of said gas street lamp posts."

Thereupon the gas company commenced ·this suit to recover the interest on the cost of the construction of the lamps referred to in the ordinance.   Without going into unnecessary detail it is adequate to say that the complaint alleged that the city was obliged by section 9 of the charter of. the company to pay the interest on the cost of the lamps, although they were no longer in use for lighting purposes.   The ordinance of the city which we have reproduced was expressly referred ,to in the complaint, and it was therein alleged that the ordinance in legal purview amounted to action by the State impairing the obligations of the contract, embodied in section 9 of the charter, and was hence void because repugnant to the Constitution of ·the United States.   After answer and due proceedings the case was decided by the trial court in favor of the gas company.   On appeal the judgment of the trial court was reversed by the Supreme Court of ·Minnesota, and a final judgment was ordered against the gas company.   To this judgment of the Supreme Court of the State this writ of error is prosecuted.

*Mr. F. W. M. Cutcheon* for plaintiff in error.   *Mr. George C. Squires* was on his brief.

*Mr. James E. Markham* for defendant in error.

Mr. Justice White, after stating the case, delivered the opinion of the court.

The Supreme Court of Minnesota held that the charter of the gas company did not impose on the city the obligation to pay the interest on the cost of constructing the lamps not used.   Construing the whole charter, the court decided that, as it provided for contracts between the parties from time to time for the supply of lights, the sole obligation imposed was that ·the·interest on the cost of the construction of the lamps should be paid by the city only during the time it was agreed that the lamps should be used and not during the life of the charter.   We

excerpt in the margin an extract from the opinion of the Supreme Court of Minnesota which more fully expresses the reasoning by which the court sustained the construction of the contract which was expounded.[1]

---

[1] " It seems to us that it would be unreasonable to hold that if at the inception of the fifty years which this charter was to run the city had ordered such street lamps to be erected, had used them ten years under a contract for lighting the streets which expired at the end of that time, and then, on account of some such contingency, had ceased to light the streets with gas, the city would be bound to pay such compensation for maintaining and keeping in repair the street lamps, lamp posts, connecting pipes and meters for forty years more, and to permit them to incumber the streets for that length of time, although the city had not a particle of use for such street lamps during all of that time. Again, it would be unreasonable to hold that the city council might, under section 9, compel the gas company to erect street lamps, and then, after using them a month or a year, abandon the use of gas for street lighting purposes, and thereby avoid all liability to pay any other compensation for the erection and use of the street lamps than eight per cent per annum, during such use, on the cost of erecting the same.

" But we are of the opinion that section 9 does not give the council the right in its discretion to compel the erection of street lamps regardless of how long the city may use them, and without protecting the gas company by stipulating a length of time during which the city shall use them.

" Section 9 provides that whenever the city 'by resolution of its board of aldermen directs lamps to be erected and lighted in the streets of the city,' the gas company shall erect the same and keep them in repair; but, as we have seen, the city has no power under the charter to compel the streets to be lighted except by making for that purpose a contract voluntary as to both parties. When making such a contract the gas company can refuse to contract for lighting any street lamps except those already erected, and before the city can compel the erection of more lamps it must first make a contract for lighting them. In making such a contract, the gas company can protect itself by insisting that such contract for lighting such new lamps shall cover a period of time of sufficient length that the eight per cent per annum to be paid during that time will renumerate the gas company for erecting the lamps. We are of the opinion that under these circumstances the charter does not require the city to pay such compensation for street lamps which it is not under any contract to pay.

" This, in our opinion, is the more reasonable and proper construction of the provision of the charter, and the one which should be adopted. We therefore hold that the city is not liable for such compensation for street lamps after it has ceased the use of the same and abandoned the use of gas in lighting its streets."

Because the Supreme Court of Minnesota decided the controversy solely upon its appreciation of the meaning of the original contract, it does not necessarily follow that no Federal question is presented for decision. Where subsequent state legislation is asserted to be repugnant to the Constitution of the United States because such legislation impairs the obligations of a contract, the power to determine whether there be such impairment imposes also on this court the duty, when necessary, to ascertain whether there was a contract and its import. And this, though it be in a given case, the state court has decided that there was no impairment either because the contract had never existed or because from an interpretation of its provisions it was found that the obligations which it is asserted were impaired, never arose. *Houston & Texas Central Rd.* v. *Texas*, 177 U. S. 66, 77, and cases cited. In cases of this nature, therefore, the questions to be considered are these: Was there a contract, and if yes, what obligations arose from it? and, Has there been state legislation impairing the contract obligations? Abstractly speaking, the duty would be first in order to determine whether the contract existed and its true meaning, before ascertaining whether any obligations of the contract had been impaired by subsequent legislation. As, however, the authority to review the judgment of the Supreme Court of Minnesota in this case, and in doing so to interpret the contract and enforce its obligations, arises solely because of the assertion that the obligations of the contract have been impaired by subsequent legislation, we will first consider whether, under any view which may be taken of the contract, there is shown on this record any act of state legislation which can be properly said to have impaired the obligations of the contract in the constitutional import of these words. That is to say, we propose first to consider, even although it be conceded *arguendo* that the Supreme Court of the State of Minnesota erroneously decided that the contract relied upon did not impose the duty on the city to pay interest on the cost of construction of the unused gas lamps, whether there has been any state legislation impairing the obligation of such contract. Whilst it is not pretended that there is any law of the State of Minnesota by which the obligation of the contract was

impaired, it is asserted that such consequence results from the ordinance adopted by the municipal council of the city of St. Paul, the text of which ordinance has been reproduced in the statement of the case.

It is no longer open to question that "a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of the article of the Constitution of the United States." *New Orleans Waterworks Co.* v. *Louisiana Sugar Refining Company,* 125 U. S. 18, 31; *Hamilton Gas Light & Coke Company* v. *Hamilton City,* 146 U. S. 258; *Walla Walla* v. *Walla Walla Water Company,* 172 U. S. 1.

Referring to the ordinance in question from the provisions of which it is alone contended the impairment of the contract arose, it will be seen that only two subjects are therein referred to, the first, a command by the city to the gas company to " forthwith remove the gas street lamp posts in that portion of the city now lighted by electric light under contract with the said company, which said lamps have been discontinued by order of the board of public works;" and, second, a declarstion on the part of the municipal council of St. Paul of its intention not thereafter to pay the gas company interest on the cost of construction of the lamps so directed to be removed. If then there be any subsequent legislation impairing the obligation of the contract, it must arise from one or both of the provisions just referred to. Now, it is apparent that the command given by the city to the gas company to remove the unused gas lamp posts from the streets in no way even tended to impair the obligation, if any, resting on the city to pay interest on the cost of the construction of the lamp posts which were ordered to be removed, since in any event, if the contract imposed the obligation to make such payment, the duty of the city to do so was left absolutely unaffected by the order to remove. That is to say, if the duty to pay was created by the contract, such obligation remained wholly untouched by the order of removal. This being true, it results that the order to remove the unused lamp posts

cannot be treated as an impairment of the obligations of the contract without saying that such obligations were destroyed, although they were absolutely unaffected by the act which it is asserted brought about the impairment. And it will become at once manifest from a consideration of the remaining provision of the ordinance that the same result must follow. The other provision in question created no new right or imposed no new duty substantially antagonistic to the obligations of the contract, but simply expressed the purpose of the city not in the future to pay the interest on the cost of construction of the lamp posts which were ordered to be removed. That is to say, it was but a denial by the city of its obligation to pay, and a notice of its purpose to challenge in the future the existence of the duty to make such payment. This denial, whilst embodied in an ordinance, was no more efficacious than if it had been expressed in any other form, such as by way of answer filed on behalf of the city in a suit brought by the company against the city to enforce what it conceived to be its rights under the contract. When the substantial scope of this provision of the ordinance is thus clearly understood, it is seen that the contention here advanced of impairment of the obligations of the contract arising from this provision of the ordinance reduces itself at once to the proposition that wherever it is asserted on the one hand that a municipality is bound by a contract to perform a particular act and the municipality denies that it is liable under the contract to do so, thereby an impairment of the obligations of the contract arises in violation of the Constitution of the United States. But this amounts only to the contention that every case involving a controversy concerning a municipal contract is one of Federal cognizance, determinable ultimately in this court. Thus to reduce the proposition to its ultimate conception is to demonstrate its error.

It is argued, however, that, as under the charter of the city of St. Paul the comptroller of the city was empowered to audit the claims of the gas company as a prerequisite to the appropriation by the city council of the necessary money to pay such claims, therefore the ordinance, to the extent that it deprived the comptroller of the power to audit, divested him

of an attribute which he could otherwise have exercised on be-half of the claim if he favored its payment, and hence the ordinance impaired the contract obligations. But it is not pre-tended that the effect of the auditing by the comptroller would have been to authorize the payment of the claim, or indeed that it was anything but advisory; since even after he had audited, the payment could not have been procured without the passage of an appropriation by the council for that purpose. A large number of cases were cited in the argument at bar, under the assumption that they sustain the proposition that wherever a mere denial of contract liability is made by a municipality, such denial is an impairment of the obligations of the contract, since it is a refusal to comply with the contract and hence is a disregard of the obligations which the contract created. We do not stop to refer to all these cases thus relied upon, because we think it results from the statement of the proposition that it is without foundation. However, we briefly advert to a few of the cases to show how inapposite they are to the proposition which they are cited to maintain. Thus, in *Murray* v. *Charleston*, 96 U. S. 432, the decision which was under review had given effect to an ordinance of the city of Charleston deducting a sum of taxation from the bonds held by the complainant. In *Walla Walla* v. *Walla Walla Water Company*, 172 U. S. 1, the decision of the state court gave effect to a municipal ordinance which provided for the construction by the city of a new waterworks plant which was to become a competitor with the contracting company. In *McCullough* v. *Virginia*, 172 U. S. 102, it was expressly held, although the state court had rested its decision on the ground that there was no contract, in view of the previous decisions of this court and of the state court, relating to the contract which was under consideration, that the necessary effect of the ruling was in substance to give effect to an act of the legislature of Virginia, passed subsequent to the contract, and which impaired its obligations. In *Houston & Texas Central Railroad Co.* v. *Texas*, 177 U. S. 66, 74, this court, after no-ticing the fact that the state court had decided the case " without reference to the act of 1870 which the plaintiff in error [the rail-road company] alleges to be an impairment of the contract set

up by it in the pleadings,"—said : "We think the judgment of the court did give effect to that act." And the soundness of this conclusion the opinion then proceeded to demonstrate, it being apparent that the legislative act of impairment which the court found had been given effect to by the state decision was not a mere denial of liability, but amounted to an impairment of the substantial rights conferred by the contract.

As it is apparent from the foregoing considerations that, even conceding the contract to be as contended for, no legislative act is shown to exist, from the enforcement of which an impairment of the obligations of the contract—within the purview of the Constitution—did or could result, it follows that the record involves solely an interpretation of the contract, and, therefore, presents no controversy within the jurisdiction of this court.

*Dismissed for want of jurisdiction.*