## MERCANTILE TRUST & DEPOSIT COMPANY OF BALTIMORE *v.* CITY OF COLUMBUS.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 50.  Argued October 22, 23, 1906.—Decided December 3, 1906.

Where the bill of the trustee of bondholders of a water company, claiming an exclusive contract with a municipality, shows that an act of the legislature and an ordinance of the city have been passed under which the city shall construct its own water works, and that during the life of the contract the source of the ability of the water company to pay interest on, and principal of, its bonds will be cut off, a case is presented involving a constitutional question, and irrespective of diverse citizenship, the Circuit Court of the United States has jurisdiction to determine the nature and validity of the original contract and whether the subsequent legislation and ordinance impaired its obligations within the meaning of the Federal Constitution.

THE appellant filed its bill in this case in the United States Circuit Court for the Northern District of Georgia to obtain an injunction restraining the city of Columbus, in the State of Georgia (one of above defendants) from the construction of waterworks for the supplying of water to the defendant city and its inhabitants. Judgment was entered by the Circuit Court dismissing the bill for the want of jurisdiction, and the question of jurisdiction alone was certified to this court under sec. 5, ch. 517, of the acts of Congress of 1891.

The complainant based the jurisdiction of the Circuit Court on the ground of diverse citizenship, and also upon the existence of a Federal question. An amended bill was filed and a motion made for an injunction *pendente lite*, enjoining the city from issuing bonds or doing any work towards the construction of the waterworks. The motion was granted, and a demurrer to the amended bill having been overruled, and issue having been joined by the service of an answer and replication, the

case was referred to a master.   Evidence was taken before him, and a report thereafter filed, to which exceptions were duly taken by both parties and an argument had thereon before the court.   The judge certifies that before a decision had been made by the court on the questions of law raised by the exceptions the defendant filed a motion to dismiss the bill on the ground that if the parties to the suit were properly placed, there was no such diversity of citizenship as was required to sustain the jurisdiction of the court, and also on the ground that there was no Federal question involved.   The court granted the motion on those grounds and made its certificate, as stated.

The suit was brought by the appellant, a citizen of Maryland, against the city of Columbus, a municipal corporation created by the State of Georgia, and its mayor and aldermen, all of them citizens of the State of Georgia, and against the Columbus Waterworks Company, a corporation also created by the State of Georgia.

It appears from the averments contained in the bill that the complainant is trustee for the bondholders in a certain mortgage executed by the waterworks company, in January, 1891, to complainant, as trustee, to secure the payment of certain bonds, and to raise money for the purpose of making improvements and additions to the waterworks which were to supply the city of Columbus with water, and for providing for future extensions and improvements thereof.   The mortgage is upon all of the company's property, and also upon all contracts made, or thereafter to be made, between the waterworks company and the city of Columbus for the supplying of water by the company to the city, or any public institution or public office.   The mortgage also included all the water rents, etc., and all the income whatsoever of the mortgagor, due or to grow due, arising from its business of supplying water within the city, or within its vicinity or elsewhere, during the continuance of the lien under the mortgage.

It also included therein a contract, which had been entered

into in October, 1881, between one Thomas R. White, of the city of Philadelphia, and the mayor and council of the city of Columbus (defendant herein), for the construction and operation of an effective system of waterworks for the supplying of the city with water for the various uses required.   This is the contract in question in this suit.   Provision for a corporation was made in the contract to which it was to be assigned; the corporation was subsequently created, and such contract was assigned by White to the water company, and the assignment was assented to by the city.   The contract provided in great detail for the erection of a water system for the city and for private consumers, and it contained all the usual provisions for that kind of a contract.

It was, among other things, provided in the contract that the city should grant a franchise to the other party named therein, for the exclusive privilege of maintaining and operating the waterworks for a period of thirty years, or until they might be purchased by the city, as provided in the contract.

The work under the contract was completed and accepted by the city November 6, 1882, and the company then commenced to, and did for some years, furnish water, under its provisions, to the city and its inhabitants.

Thereafter disputes and differences arose between the parties, regarding the sufficient supply of water for the city and its inhabitants, the city contending that the water company had entirely failed to satisfactorily fulfill the contract in that respect.   The company contended, on the other hand, that it had done all that possibly could be done, under the circumstances of an extraordinary and unprecedented drought, and was willing to spend more money for the purpose of enlarging its field of supply, if the city would not by its proposed action defeat such purpose.   The differences continued, until finally, on the fourteenth day of September, 1902, the city passed an ordinance for submitting to the voters of the city the question of issuing $250,000 of bonds of the city, to be used for the purpose of building and operating and owning a system of

waterworks by the city. A special election was called for the fourth day of December, 1902. The ordinance opened with the statement that the water company had totally failed to supply the city of Columbus and its inhabitants with a sufficient quantity of pure and wholesome water, and that the public health of the city was of paramount importance to every other consideration, and the city, therefore, proposed an ordinance (which it set forth for the approval of the electors) for the issuing of bonds for the building of a separate system of works to be owned and operated by the city. It was provided in the proposed ordinance that if the electors assented to the issue and sale of the bonds to be used for the purpose of building and operating the waterworks, that thereafter bonds of the city should be issued upon certain conditions, and an annual tax should be levied for the payment of the interest on the bonds and a certain proportion of the principal every year. The proposed ordinance also provided that in the event of the assent of the voters at the election, and the issuing of the bonds when the same should have been validated, as by law required, thereafter the waterworks were to be considered a separate and distinct department of the city government, and a water commission was to be created for the government and control and operation of the waterworks. Other provisions were contained in the proposed ordinance regulating the doing of the work and the operation of the constructed work.

On the third day of December, 1902, (the day before the election under the city ordinance), the legislature, at the request, as it may be presumed, of the city, passed an act to amend its charter, so as to confer power and authority upon the city to construct, maintain and operate a system of waterworks of its own. The act gave power to the city to appropriate private property, and to lay its pipes through its streets, either within or without the corporate limits of the city, and the city was given power and authority generally to do and perform all things necessary to carry the object and purposes of the act into effect. Sec. 7 of the act expressly conferred

upon the city the right to issue and sell its bonds, for the purposes of building and operating the waterworks. Provision was also made in the act for the appointment of a board of water commissioners, who should have the supervision and control of the construction, operation and management of the waterworks. This board was to regulate the distribution and use of water in all places, it was to fix the price for the use thereof, and terms of payment therefor. The moneys coming into the hands of the board for water rents·and the sale of any apparatus, or other property, or from any other source connected with the waterworks, were to be paid to the treasurer of the city, and were to be used by him only for the purpose of paying any principal and interest becoming due on the bonds issued by the city. The board was to be regarded as a subordinate branch of the city government.

The ordinance above mentioned and this act of the legislature of Georgia having been passed subsequently to the execution of the contract, are asserted by the complainant to be acts which impair the obligation of such contract.

Proceedings were taken under the ordinance, and the election was held pursuant to its provisions on the fourth of December, 1902, and resulted in the assent of the requisite number of electors to the issuing of the bonds and the use of the proceeds in the erection of a water system, to be owned and controlled by the city.

A board of water commissioners was thereupon appointed, under the provisions of the ordinance and the act of the legislature, and on the sixth of May, 1903, the common council received a communication from the board, through its secretary, wherein the board requested the common council to invite bids for the bonds of the city for the purpose of constructing the system of waterworks, which bids were to be opened on the first of August, 1903. Thereupon the common council on the same day complied with the request, and directed the publication of a notice for receiving bids for the bonds up to August 1, 1903.

On the thirtieth of July, 1903, the complainant filed this bill against the parties named. It is contended in the bill that, as trustee for the bondholders, the complainant can maintain this action, on the ground of an impairment of the obligation of the contract already mentioned, and that as the water company has mortgaged to the complainant the benefits of its contract with the city, together with the other property of the water company, as security for the payment of its bonds, any such action as proposed by the city will destroy the value of the bonds of the water company and will amount to the taking of complainant trustee's property without due process of law, and will deprive it of the equal protection of the laws. The water company is made a defendant for the purpose of binding it, as averred in the bill, by the judgment and decree that may be rendered in this cause, so that the right and equity of subrogation, or other rights and equities set up, may be enforced and decreed against the water company, and that the water company may be held and decreed, on its part, to specifically perform all the obligations of such contract. An injunction was asked for and granted, as stated, *pendente lite.* It was also asked that the defendant city might be enjoined from refusing to carry out the contract with the waterworks company, and from placing any obstacle in the way of the due performance thereof, according to its terms.

*Mr. Joseph Packard,* and *Mr. Olin J. Wimberly,* with whom *Mr. Louis F. Garrard,* and *Mr. John I. Hall* were on the brief, for appellant.

*Mr. W. A. Wimbish* and *Mr. J. H. Martin,* with whom *Mr. T. T. Miller* was on the brief, for appellee:

Should the acts of the city be construed to be the equivalent of a repudiation of the contract, this would not give rise to any Federal question.

A denial of liability under a contract does not affect its obligation. The inherent difference between a contract and

its obligation has been repeatedly recognized by this court, which has declared that the word "obligation" occurring in the contract clause of the Constitution was used advisedly. Parties make contracts; the law creates the obligation. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 Wheat. 213.

Since the law creates the obligation, only the law can impair or destroy it. It cannot be affected by any act or default of either contracting party. The constitutional provision is intended to protect the obligation of contracts against impairment by the laws of a State. The subsequent law must have the effect of loosening the chain of the obligation by changing the rights or the essential remedies of the parties as they existed when the contract was entered into. *Bronson* v. *Kinzie,* 1 How. 312; *McCracken* v. *Haywood,* 2 How. 608; *Edwards* v. *Kearzey,* 96 U. S. 595.

A municipal ordinance, if authorized by the legislature, may have the force and effect of a law of the State; and if obnoxious to the Constitution, be held to impair the obligation of a contract. The ordinance must have been passed in pursuance of state legislation passed subsequent to the contract. *McCracken* v. *Haywood,* 2 How. 608; *Lehigh Water Co.* v. *Easton,* 121 U. S. 392.

The mere fact, however, that a party repudiating a contract is a municipal corporation, does not give to its refusal to perform the character of a law impairing the obligation of the contract, or constitute the taking of private property without due process of law. *Dawson* v. *Columbia Ave. Trust Co.,* 197 U. S. 178; *Gas Light Co.* v. *St. Paul,* 181 U. S. 142; *Gas Co.* v. *Hamilton,* 146 U. S. 258.

In pursuing the course adopted, the city of Columbus acted without legislative sanction. No law of the State had been passed subsequent to the contract which in the slightest degree altered the rights or remedies of either party.

Whether the contract granted an exclusive privilege such as to prevent the city from constructing its own system, and

if so whether the city had power to grant such an exclusive right, are questions to be determined by the laws of the State, in no wise involving the construction or application of the Constitution of the United States. *Fergus Falls* v. *Water Co.*, 72 Fed. Rep. 873.

If the city in fact granted such exclusive privilege, and if in law it had power so to do, none of the alleged acts on the part of the city have in the least impaired the obligation of the contract.

The refusal of the city to pay an installment of water rental claimed to be due is alleged to have been "unlawful," and is plainly a mere breach of the contract. *Ratton Water Co.* v. *Ratton*, 174 U. S. 360; *Gas Light Co.* v. *St. Paul*, 181 U. S. 142; *Dawson* v. *Columbia Avenue Trust Co.*, 197 U. S. 178.

In Georgia, a city in the exercise of its police power and in order to promote the general welfare may contract for or itself provide a supply of water for domestic use and fire protection. *Frederick* v. *Augusta*, 5 Georgia, 561; *Rome* v. *Cabott*, 28 Georgia, 50; *Wells* v. *Atlanta*, 43 Georgia, 67; *Dawson* v. *Dawson Waterworks Co.*, 106 Georgia, 709.

Nothing in the act of December 3, 1902, vitalized, sanctioned or ratified any previous action on the part of the city which would otherwise be illegal. The city already possessed the power to build waterworks. Its right to issue bonds for this purpose was not derived from the act, but was founded upon laws in existence when the contract was made. If it was forbidden by its contract from taking the action the city could claim no immunity by anything contained in this act of the legislature. It was only authorized to proceed lawfully in the execution of its purpose, not in contravention of law by a disregard of any valid contract obligation.

The court will look beyond the allegations of the bill to the facts properly pleaded in order to determine whether a real and substantial Federal question is presented. *Millingar* v. *Hartupee*, 6 Wall. 258; *Wilson* v. *North Carolina*, 169 U. S. 586, 595; *McCain* v. *Des Moines*, 174 U. S. 168, 181; *New*

*Orleans Waterworks Co.* v. *Louisiana,* 185 U. S. 336, 344; *Sawyer* v. *Piper,* 189 U. S. 154; *Waterworks Co.* v. *Newburyport,* 193 U. S. 561, 576; *Harris* v. *Rosenberger,* 145 Fed. Rep. 449.

In the absence of express legislative authority a municipal corporation cannot grant an irrevocable, exclusive privilege so as to create a monopoly. *Minturn* v. *La Rue,* 23 How. 453; *Wright* v. *Nagle,* 101 U. S. 791; *Street Railway Co.* v. *Detroit,* 171 U. S. 48; *Illinois Trust & Savings Bank* v. *Arkansas City,* 76 Fed. Rep. 271; *Jackson Co. R. Co.* v. *Interstate &c. Co.,* 24 Fed. Rep. 306; *Saginaw Gas Co.* v. *Saginaw,* 28 Fed. Rep. 529; *Grand Rapids* v. *Grand Rapids,* 33 Fed. Rep. 659; *In re Brooklyn,* 143 N. Y. 596; *Long Island Water Co.* v. *Brooklyn,* 166 U. S. 685.

In grants of exclusive franchises by municipal corporations nothing passes by implication. The grant is to be construed more strongly in favor of the public and against the grantee. *Water Co.* v. *Knoxville,* 200 U. S. 22; *Joplin* v. *Light Co.,* 191 U. S. 150; Const. Georgia, art. I, § 2, par. 2; Code, § 5730; Const. Alabama, § 1, art. 23, construed in *Railway Co.* v. *Birmingham Railway Co.,* 58 Am. Rep. 615; *Beinville Water Co.* v. *Mobile,* 186 U. S. 212.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The sole question arising herein is whether the Federal Circuit Court had the jurisdiction to determine the issue involved. That question alone has been certified to this court by the Circuit Court, under the provisions of the fifth section of the act of Congress of 1891. The grounds of the dismissal of the bill are set forth in the foregoing statement of facts.

Whether this case comes within the principle laid down by this court in *City of Dawson* v. *Columbia Avenue Saving Fund &c. Co.,* 197 U. S. 178, upon the question of diversity of citizenship, it is unnecessary to determine, because there is, in our

opinion, a Federal question involved, which gave the Circuit
Court jurisdiction to determine the case without reference to
citizenship. It is averred in the bill that by reason of the
passage of the ordinance of the common council of the city
and the act of the legislature of Georgia, passed December 3,
1902, the obligation of the contract set forth in the bill was
impaired. It is part of the duty of the Federal courts, under
the impairment of the obligation of contract clause in the
Constitution, to decide whether there be a valid contract and
what its construction is, and whether, as construed, there is
any subsequent legislation, by municipality or by the state
legislature, which impairs its obligation. That the ordinance
of the common council of a municipal corporation may con-
stitute a law within the meaning of this constitutional clause
is too well settled to admit of doubt. St. Paul Gas Light Co.
v. St. Paul, 181 U. S. 142, 148; Davis &c. Co. v. Los Angeles,
189 U. S. 207, 216. The contract in this case provided in
terms for the exclusive privilege of supplying water to the
city and its inhabitants for thirty years from the date of its
completion. By the ordinance of the city of 1902 the city
insisted that the water company had totally failed to fulfill
its contract to supply water to the city and its inhabitants.
Such ordinance then went on and proposed to the electors an
ordinance, the material portions of which have been set forth
in the foregoing statement.

The act of the legislature, passed the day before the day of
the election, is also referred to in the statement, and some of
its material provisions are mentioned.

The ordinance and the act should properly be considered
together, and they evidently contemplate an immediate
execution of the work in case the electors assented to the
issuing of the bonds. If the provisions of the ordinance and
act were carried out, the effect, of course, could be none other
than disastrous to the water company, as the obligations of
the contract (if any) would thereby be so far impaired as to
render the contract of no value. The source of the ability of

the water company to pay the interest on its bonds, and the principal thereof, as they became due was, by this ordinance and act, entirely cut off.

Was not this legislation, and legislation of a kind materially to impair the obligation of the contract then existing, and not only to impair, but to wholly destroy its value? We are not called upon now to say whether the exclusive right for thirty years, granted to the water company by the contract to supply the city with water, was legal and valid, because that is a part of the question whether the obligation of the contract has been impaired by the subsequent ordinances of the city and the laws of the State. It cannot be determined that there is an impairment of the obligation of a contract until it is determined what the contract is, and whether it is a valid contract. If it be valid, it still remains to be determined whether the subsequent proceedings of the city council and legislature impaired its obligation. The ordinance and act were not mere statements of an intention on the part of one of the parties to a contract not to be bound by its obligations. Such a denial on the part, even of a municipal corporation, contained in an ordinance to that effect, is not legislation impairing the obligation of a contract. *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142. It was stated in that case that the ordinance in question "created no new right or imposed no new duty substantially antagonistic to the obligations of the contract, but simply expressed the purpose of the city not in the future to pay the interest on the cost of construction of the lamp posts which were ordered to be removed. . . . When the substantial scope of this provision of the ordinance is clearly understood, it is seen that the contention here advanced of impairment of the obligations of the contract arising from this provision of the ordinance reduces itself at once to the proposition that wherever it is asserted on the one hand that a municipality is bound by a contract to perform a particular act and the municipality denies that it is liable under the contract to do so, thereby an impairment of the obligations of the con-

tract arises in violation of the Constitution of the United States. But this amounts only to the contention that every case involving a controversy concerning a municipal contract is one of Federal cognizance, determinable ultimately in this court. Thus to reduce the proposition to its ultimate conception is to demonstrate its error."

In the case at bar the conditions are entirely different. There was not merely a denial by the city of its obligation under the contract, but the question is whether there were not new and substantial duties in positive opposition to those contained in the contract created and their performance provided for by the ordinances and act. The act of the legislature aided the city by granting it power to itself erect waterworks and to issue bonds in payment of the cost thereof, and the city was proceeding to avail itself of the power thus granted, when its progress was arrested by the filing of the bill in this case and the issuing of a temporary injunction. It would seem as if the case were really within the principle decided in *Walla Walla City* v. *Walla Walla Water Company,* 172 U. S. 1; *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, again reported 202 U. S. 453; *Davis &c. Co.* v. *Los Angeles,* 189 U. S. 207; *Knoxville Water Company* v. *Knoxville,* 200 U. S. 22. In the last cited case the water company contended that the agreement mentioned in that case constituted a contract, for which it acquired for a given period the exclusive right to supply water to the city and its inhabitants, and it insisted that the obligation of this contract would be impaired if the city, acting under the acts of the legislature and under the ordinance mentioned, established and maintained an independent and separate system of waterworks in competition with those of the water company. It was held that such a question was one arising under the Constitution of the United States and that the Federal Circuit Court had jurisdiction thereof without regard to the citizenship of the parties. It must be remembered that in the case before us the sole question is whether the Federal Circuit Court had jurisdiction to determine the

. case, and we are not now concerned with the question as to how the matter should be determined, but only whether the Circuit Court had jurisdiction to determine it. As stated in *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, at page 82, in speaking of the question of jurisdiction: "We do not wish to be understood as now determining such questions in the present case, for we are only considering whether or not the Circuit Court had jurisdiction to consider them."

Concluding that the court below had such jurisdiction, because it presents a controversy arising under the Constitution of the United States, the judgment of the Circuit Court is reversed, and the case remanded to that court to take proceedings therein according to law.

*Reversed.*