SOUTHERN BELL TELEPHONE & TELEGRAPH CO. v. CITY OF BIR-
MINGHAM, ALA., et al.

(District Court, N. D. Alabama, S. D.   January 3, 1914.)

No. 240.

1. CONSTITUTIONAL LAW (§ 121*)—OBLIGATION OF CONTRACTS—LAW IMPAIRING.
A municipal ordinance, the effect of which is merely to deny liability on
a contract or to declare the repudiation thereof, and which prescribes no
antagonistic rights or duties, is not legislation impairing its obligation in
violation of the contract clause of the Constitution, although the contract
repudiated is valid and binding.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 285,
304–311, 342–348; Dec. Dig. § 121.*]

2. CONSTITUTIONAL LAW (§ 135*)—INJUNCTION (§ 59*)—SUBJECTS OF RELIEF—
ENFORCEMENT OF MUNICIPAL ORDINANCES.
A city ordinance merely repealing, a prior ordinance which purported to
make effective a contract between the city and a telephone company fixing
rates to be charged by the company to subscribers for a term of years, on
the ground that the contract was ultra vires and invalid, without substi-
tuting other rates or restricting the right of the company to fix rates, or
prescribing any steps to be taken by the city thereunder, did not impair
the obligation of the contract, and a court of equity has no power to
grant injunctive relief against it.
[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 380–
387; Dec. Dig. § 135;* Injunction, Cent. Dig. §§ 114–116, 128; Dec. Dig.
§ 59.*]

3. INJUNCTION (§ 59*)—SUBJECTS OF RELIEF—ENFORCEMENT OF CONTRACT.
A court of equity is without jurisdiction to grant an injunction restrain-
ing individual subscribers of a telephone company from refusing to pay
rates fixed by a contract between the company and the city.
[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 114–116, 128;
Dec. Dig. § 59.*]

In Equity.   Suit by the Southern Bell Telephone & Telegraph Com-
pany against the City of Birmingham, Ala., and others.   On motion
for preliminary injunction.   Denied.

J. T. Stokeley, of Birmingham, Ala., and J. C. Rich, of Mobile, Ala.,
for plaintiff.

Romaine Boyd, of Birmingham, Ala., for defendants.

GRUBB, District Judge.   This is a bill filed by the plaintiff to re-
strain the enforcement of an ordinance of the city of Birmingham,
and to have it declared null and void and a cloud on the plaintiff's title
to its franchise to collect tolls from its subscribers.   The parties de-
fendant are the city, in its corporate capacity, the three commission-
ers, in their official capacity, and also individually, as representing the
class of subscribers to plaintiff's service who are or will be affected
by the increase of rates, who are made parties, under the authority of
Equity Rule 38 (198 Fed. xxix).   A temporary injunction is prayed
for in the bill, and the matter is submitted for decision only upon the
application for an injunction pendente lite at this time.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The ordinance assailed was enacted December 12, 1913, and, in effect, repealed a previous ordinance of December 22, 1911, which purported to make effective an agreement, between the plaintiff and the city, to fix rates for service to be charged by the plaintiff to the inhabitants of the city, in the future, for a period of five years. By its terms, the plaintiff was to have the right to raise its rates, for duplex residence service, 50 cents a month to each subscriber, beginning the 1st day of January, 1914. The repealing ordinance merely recited the making of the agreement, the passage of the ordinance; that the contract was ultra vires of the powers of the city commission; that it had been breached by the plaintiff's alleged failure to give the character of service stipulated to be given by plaintiff to its subscribers, and declared the contract and ordinance rescinded and annulled as being both ultra vires, and as having been breached by plaintiff. This is the ordinance the validity of which is assailed by the bill. The contention of the plaintiff is that the repealing ordinance impairs the obligation of the original contract and the ordinance ratifying it, and is for that reason obnoxious to both the federal and state Constitutions.

In order to sustain the contention that the ordinance of December 12, 1913, is invalid for the reason asserted, the plaintiff must establish: (1) The existence of the contract; (2) the obligation imposed on the city and its inhabitants by it; and (3) the impairment of such obligation by state legislation. Each is essential to plaintiff's relief and must be established to the satisfaction of the court before an injunction pendente lite should be granted.

[1] The rule is well settled that an ordinance of a municipality, the effect of which is merely to deny liability on a contract or to declare the repudiation thereof, and which prescribes no antagonistic rights or duties, is not legislation impairing its obligation, though the contract so repudiated is valid and binding. In the case of St. Paul Gas Light Co. v. St. Paul, 181 U. S. 142, 21 Sup. Ct. 575, 45 L. Ed. 788, the court expressed the principle in this language:

"The other provision in question created no new right, or imposed no new duty substantially antagonistic to the obligations of the contract, but simply expressed the purpose of the city not in the future to pay the interest on the cost of the construction of the lamp posts which were ordered to be removed. That is to say, it was but a denial by the city of its obligation to pay, and a notice of its purpose to challenge in the future the existence of the duty to make such payment. This denial, whilst embodied in an ordinance, was no more efficacious than if it had been expressed in any other form, such as by way of answer filed on behalf of the city in a suit brought by the company against the city to enforce what it conceived to be its rights under the contract. When the substantial scope of this provision of the ordinance is thus clearly understood, it is seen that the contention here advanced of impairment of the obligations of the contract arising from this provision of the ordinance reduces itself at once to the proposition that wherever it is asserted on the one hand that a municipality is bound by a contract to perform a particular act, and the municipality denies that it is liable under the contract to do so, thereby an impairment of the obligations of the contract arises in violation of the Constitution of the United States. But this amounts only to the contention that every case involving a controversy covering a municipal contract is one of federal cognizance, determinable ultimately in this court. Thus to reduce the proposition to its ultimate conception is to demonstrate its error."

In the case of Mercantile Trust Co. v. Columbus. 203 U. S. 311, 27 Sup. Ct. 83, 51 L. Ed. 198, the court said:

"The ordinance and act were not mere statements of an intention on the part of one of the parties to a contract not to be bound by its obligations. Such a denial on the part, even of a municipal corporation, contained in an ordinance to that effect, is not legislation impairing the obligation of a contract. St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142 [21 Sup. Ct. 575, 45 L. Ed. 788]."

And after quoting from the case there cited, the portion incorporated in this opinion, the court said further:

"In the case at bar the conditions are entirely different. There was not merely a denial by the city of its obligation under the contract, but the question is whether there were not new and substantial duties in positive opposition to those contained in the contract created and their performance provided for by the ordinances and act. The act of the Legislature aided the city by granting it power to itself erect waterworks and to issue bonds in payment thereof, and the city was proceeding to avail itself of the power thus granted, when its progress was arrested by the filing of the bill in this case and the issuing of a temporary injunction. It would seem as if the case were really within the principle decided in Walla Walla v. Walla Walla Water Co., 172 U. S. 1 [19 Sup. Ct. 77, 43 L. Ed. 341]; Vicksburg Water Co. v. Vicksburg, 185 U. S. 65 [22 Sup. Ct. 585, 46 L. Ed. 808]; again reported 202 U. S. 453 [26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253]; Davis v. Los Angeles, 189 U. S. 207 [23 Sup. Ct. 498, 47 L. Ed. 778]; Knoxville Water Co. v. Knoxville, 200 U. S. 22 [26 Sup. Ct. 224, 50 L. Ed. 353.]"

The case of Dawson v. Columbia Trust Co., 197 U. S. 178, 181, 25 Sup. Ct. 420, 422 (49 L. Ed. 713), clearly differentiates the class of cases in which the ordinance merely denies liability and repudiates the contract obligation from the other class in which the ordinance creates rights or duties antagonistic to the contract rights, charged to have been impaired. In that case, the court said:

"The mere fact that the city was a municipal corporation does not give to its refusal the character of a law impairing the obligation of the contracts or deprive a citizen of property without due process of law. That point was decided in St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142–150 [21 Sup. Ct. 575, 45 L. Ed. 788]. Undoubtedly the decisions on the two sides of the lines are very near to each other. But the case at bar is governed by the one which we have cited, and not by Walla Walla v. Walla Walla Water Co., 172 U. S. 1 [19 Sup. Ct. 77, 43 L. Ed. 341], which is cited and distinguished in St. Paul Gaslight Co. v. St. Paul. In Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65 [22 Sup. Ct. 585, 46 L. Ed. 808], the city had made a contract with the waterworks company, and afterwards a law was passed authorizing the city to build new works. The city, acting under this law, denied liability and took steps to build the works, whereupon the waterworks company filed its bill, alleging the law to be unconstitutional. This bill was held to present a case under the Constitution. In the case before us there was no legislation subsequent to the contract, and it is not even shown that there was a color of previous legislation for the city's acts. These acts are alleged to be unlawful, and the allegation would be maintained by showing that they were not warranted by the laws of the state. See Hamilton Gas Co. v. Hamilton City, 146 U. S. 258–266 [13 Sup. Ct. 90, 36 L. Ed. 963]; Lehigh Water Co. v. Easton, 121 U. S. 388–392 [7 Sup. Ct. 916, 30 L. Ed. 1059]. We repeat that something more than a mere refusal of a municipal corporation to perform its contract is necessary to make a law impairing the obligation of contracts, or otherwise give rise to a suit under the Constitution of the United States."

In the case of Weller et al. v. City of Gadsden et al., 141 Ala. 642, 37 South. 682, 3 Ann. Cas. 981, the then Chief Justice said:

"The last question is whether, in view of the nullity of the ordinance, assailed by the bill, a resort to a court of equity by the complainants, under the circumstances disclosed, is either proper or necessary. This question has not been discussed by counsel for the city, who have confined themselves to insisting that the ordinance contract was totally invalid, and that, at all events, the city had the right to repeal or revoke it, before work was begun. It necessarily arises, however, and must be decided, upon the motion to dismiss for want of equity; for although the rights of appellants are declared, in arriving at the ultimate conclusion here reached, it would be idle to return the case to the court below, merely for the purpose of having a decree, nullifying that which appears on its face to be void. 6 Am. & Eng. Ency. Law (2d Ed.) 155; Meloy v. Dougherty, 16 Wis. 269.

"In the fourth paragraph of the bill, it is alleged in general terms that 'the board of aldermen are threatening and endeavoring and attempting to breach said contract and repudiate the same, by preventing orators from using said streets, avenues, and alleys for the purpose of laying said water pipes, mains,' etc., but at the close of the same paragraph there is a specification under this general allegation that 'the said mayor and board of aldermen attempted to deny and deprive orators of the use of said streets, avenues, and alleys in a particular way, that is, by the passage of an ordinance, a copy of which is hereto attached, marked "Exhibit B." ' It will be noted that the time for beginning work, and for the actual enjoyment of the franchise, has not arrived and the bill does not aver a readiness or an offer to begin work, nor any application to the city to fix grades or designate streets, wherein mains are to be laid, nor any threatened act of interference with anything complainants desired to do, or that they had a right to do. Obviously, the bills simply make a case of the passage of a void ordinance, which does not even cast a cloud on their franchise or contract; it not being necessary to introduce evidence to demonstrate its invalidity. Parker v. Boutwell, 119 Ala. 297 [24 South. 860]; Borst v. Simpson, 90 Ala. 373 [7 South. 814].

"Counsel on both sides in their briefs treat the case upon the theory that nothing further was done by the city than to pass the ordinance. It is conceded by complainants that this is not a bill for specific performance. It is said to be one 'to prevent the destruction of contractual obligations,' and is treated also by their counsel as one to protect a franchise. In support of its equity, four cases are cited. S. & N. R. Co. v. Highland Avenue & Belt R. Co., 98 Ala. 400 [13 South. 682, 39 Am. St. Rep. 74]; Bienville Water Co. v. Mobile, 112 Ala. 260 [20 South. 742, 33 L. R. A. 59, 57 Am. St. Rep. 28]; Port of Mobile v. L. & N. R. Co., 84 Ala. 115 [4 South. 106, 5 Am. St. Rep. 342]; Hendricks v. Hughes, 117 Ala. 591 [23 South. 637]. But each of them was a case, wherein there was a threatened invasion by some special act of interference with a right or franchise then enjoyed or exercised. When Mitchell and associates, their successors or assigns, are ready to begin work under their contract, the void ordinance will be no obstacle, and if any interference with their rights is then threatened, it will be time enough to resort to judicial proceedings, and to consider what the remedy shall be. The repealing ordinance prescribed no penalties, and, in and of itself required no affirmative action, hostile to the rights of the complainants, on the part of the mayor or other officers or agents of the municipality.

"The bill, therefore, is without equity. As the Supreme Court of Iowa said in Des Moines Gas Co. v. City of Des Moines [44 Iowa, 505] 24 Am. Rep. 756: 'If the ordinance sought to be enjoined is void, by reason of its unconstitutionality, the plaintiff can be in no wise injured by its passage. A void law is no law, and this without doubt is true as to an ordinance. No injury —much less one of an irreparable character—can be inflicted by such an ordinance.' It is only when the invalid ordinance is sought to be put in force, or its enforcement is threatened to the injury of a right or franchise, then being enjoyed or sought to be exercised, that resort to a court for protection is necessary; and then relief is granted, not against the void ordinance, but against the wrongful act, which threatens invasion of the right."

The plaintiff relies upon the cases of Iron Mountain R. R. Co. v. Memphis, 98 Fed. 113, 37 C. C. A. 410, Detroit v. Detroit Citizens Ry.

Co., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592, and Cleveland v. Cleveland City Ry. Co., 184 U. S. 317, 24 Sup. Ct. 756, 48 L. Ed. 1102. In each of these cases there was something more in the ordinance than a mere declaration of repudiation of the contract. The ordinance, in each case, had an affirmative provision, susceptible of enforcement, in addition to the declaration of invalidity.

In the case of Iron Mountain R. R. Co. v. Memphis, the ordinance declared the forfeiture of a franchise to occupy a street with railroad tracks, and, as the court held, authorized a re-entry by the city upon the premises in possession of the railroad. Its effect, if enforced, was to dispossess the railroad of property in its possession, and it was to prevent this enforcement and the consequent dispossession of the railroad, that it was held entitled to relief. In the case at bar the ordinance authorizes no interference or disturbance of the plaintiff or its property or franchise, but merely attempts to declare invalid a contract.

In the case of Detroit v. Detroit Citizens' Ry. Co., 184 U. S. 368, at page 380, 22 Sup. Ct. 410 (46 L. Ed. 592), the city by an ordinance had reduced the fare of the street railroad company, and had prescribed a specific maximum fare as the lawful fare. Having fixed a specific fare as the only lawful fare, the railroad company was forced to accept the reduced fare, or eject the passenger, and likely create in so doing a breach of the peace. The answer of the city admitted that "they intend to enforce obedience by the company to such ordinances." Even then, the court stressed the fact that the answer of defendants did not question the jurisdiction of a court of equity, as partly justifying its retention of jurisdiction over the cause.

In the case of Cleveland v. Cleveland City Ry. Co., 194 U. S. 517, at page 531, 24 Sup. Ct. 756, at page 761 (48 L. Ed. 1102), there was also a specific maximum fare of four cents fixed by the ordinance as the only lawful fare, as was true in the Detroit case. The court relies upon the peculiar fact, present in the case, that the enforcement of the ordinance would have established two rates of fare on the same line—

"leading to consequences dangerous to the public interest, peace, and tranquility, the extent of which it would be difficult in advance to perceive. And this, we think, brings the case directly within the principle by which jurisdiction in equity was maintained in Detroit v. Detroit Citizens' Ry. Co., 184 U. S. 368 [22 Sup. Ct. 410, 46 L. Ed. 592]."

It is clear that jurisdiction was only sustained because, by reason of the peculiar relations of a passenger carrier to its patrons and the fact that the ordinance fixed a specific rate of fare, the ordinances would either necessarily have to be observed by the carrier, or breaches of the peace continually provoked in the resistance of them, to the detriment of the parties and the public. In each of those cases, as in this case, the ordinance provided no penalty for its breach, but there were other means of enforcement, from the nature of the carrier's business, that do not exist in this case.

[2] The ordinance complained of in the bill in this case fixes no rate to be observed by the plaintiff. It merely declares void a con-

tract which fixed rates. It leaves the plaintiff at liberty to fix its own rates, subject to liability only if they are unreasonable. It seeks to deprive the plaintiff of the protection of the agreement, but otherwise leaves it unhampered. The plaintiff can still put in force the increased rates. Its effect is therefore limited to repudiation of the contract, and it comes within the line of cases which holds that a mere declaration of repudiation of a contract is not action impairing the obligation of a contract, rather than within the other line of cases, relied on by the plaintiff, in which the ordinances prescribed, in addition, action looking to the enforcement of the contract.

Again, in this case the danger of breaches of the peace, as a result of the plaintiff's resistance to the ordinance, is removed because of the differing character of plaintiff's business from that of a carrier of passengers. If the plaintiff's patrons refuse to pay the rate fixed by it, it has but to discontinue their service. Its rates are collected in advance. By refusing to furnish service, it subjects itself only to the liability to be sued that any person does who breaches a contract, in good faith, but under a mistaken view of his rights. Equity does not relieve against such a situation. Discontinuance of service does not imply the necessity of ejection by force, as does the refusal to accept a reduced fare from a passenger who is already on the carrier's vehicle. The reasons which induced the Supreme Court to distinguish the cases, relied upon by plaintiff, from the general legal principle stated are absent from this case. It presents only a case of a declared repudiation of a contract by an ordinance, one which, it is well settled, does not constitute impairing action by the state.

The ordinance of December 12, 1913, has no other effect than to declare the invalidity of the previous contract and ordinance of December 22, 1911. It does not prescribe any new or different rates or tolls to be adopted by plaintiff, nor any steps to be taken by the city, or any of its officers, to enforce the abrogation of the contract. It contains no penalties, and there is nothing required to be done under it in the way of enforcing it. The harm, if any, to be caused by it, was completely accomplished upon its enactment. Its enactment could not have been properly enjoined in advance, since, being legislative action, it was not subject to the control of the courts. Its enforcement by the city cannot be enjoined, since by its terms it is not to be so enforced and no steps are prescribed to be taken by any one in the way of its enforcement.

It is said that the injury to plaintiff from its enactment comes from the moral effect its passage will have on the willingness of its subscribers to pay the increased rates after January 1, 1914. The court, however, to avoid such a result, would have been powerless to enjoin its passage, if timely application had been made to it, and a fortiori it has no power now to direct its repeal. The purpose of the plaintiff seems to be to offset the moral effect of the declaration of the invalidity of the contract, contained in the repealing ordinance, by obtaining from the court a declaration of the invalidity of the repealing ordinance in the decree for a temporary injunction.

The issuance of a temporary injunction is solely to preserve the

status pending final hearing. If it can have no such effect, if there is no disturbance of the status imminent, or if the writ, when issued, will be a mere abstract declaration of a legal principle, the court has no jurisdiction to issue it. The prevention of irreparable material injury, pending final hearing, alone justifies the court in so acting. It has no right to issue the writ for the purpose merely of declaring the law for the moral effect such a declaration may have on the parties to the suit, and when no material good can be accomplished, or is expected to be accomplished, directly thereby. There is no jurisdiction in the court to enjoin the enforcement of an ordinance which, by its terms, admits of the taking of no steps looking towards its enforcement.

The prayer for an injunction pendente lite asks that the defendants and the subscribers be enjoined—

"from doing any act or thing pursuant to or under the terms of said ordinance of December 12, 1913, in violation of said contract of December 22, 1911, and from molesting your orator in the exercise of its right to collect the rates or charges fixed by said contract, or refusing to pay the rates and charges fixed thereby."

An inspection of the ordinance of December 12, 1913, shows that no action of the city or its officers could be taken "pursuant to or under the authority" of it, since it prescribed none to be taken. It is declarative only of a forfeiture of the contract, without providing at all as to how the forfeiture is to be enforced. The only action taken, or to be taken with relation to the ordinance, upon the part of the city was its enactment. That could not have been enjoined in the first instance. Its repeal cannot now be ordered by the court. As the ordinance contains no provisions looking to its enforcement by the city or its officers, it is clear that there is no room for injunctive relief with relation to the ordinance against the city or its agents or the commissioners, as such.

[3] The bill also makes the commissioners parties defendant in their individual capacity, as representing the class of plaintiff's subscribers adversely affected by the change in rates, and the prayer asks that the subscribers be enjoined from "refusing to pay the rates and charges fixed" by the contract of December 22, 1911. It is quite clear that such relief could not be granted if there had been no ordinance of repeal involved in the case. In the absence of such an ordinance, there could be no contention of an impairment of the contract by state legislation, since in that case there would be no such legislation upon which the plaintiff could rely. The bill bases plaintiff's right to relief entirely upon such impairment.

A court of equity will not take jurisdiction to enjoin the refusal to comply with a contract in ordinary cases, nor will it do so in cases where one person has a number of contracts with different persons, but of a similar nature, for the purpose of preventing a multiplicity of suits. Laying aside the ordinance which is assailed, the bill presents merely a case in which it is anticipated that a number of persons may decline to pay a single person claimed debts because a similar legal question has arisen as to each as to their liability. It requires no argument or citation of authority to show that a court of equity has no

jurisdiction over such a controversy, even for the purpose of avoiding a multiplicity of suits, or that Equity Rule 38 is not intended to apply to such a case. Such a controversy is legal and not equitable in its nature, and the fact that one party may have many separate controversies with entirely different persons, but involving the same legal question, cannot deprive a court of law of its jurisdiction over such a controversy, and vest it in a court of equity.

The bill does not aver that the subscribers, even those who are made parties defendant as representatives of the class, have actually refused, or have even threatened to refuse, to pay the increased rates. The averment is that they will refuse to pay, relying upon the enactment of the ordinance of December 12, 1913. This is insufficient to justify injunctive relief, even if the court had general equitable jurisdiction of the cause. An order would be drastic that enjoined 14,000 persons from refusing to pay the plaintiff's charges, regardless of their ability or inability to pay, and regardless of what defenses they might have to the claim, and in a suit in which but three of the 14,000 were made parties defendant. It would require a clear case for injunctive relief to justify such action.

If the injunction would not lie in the absence of the ordinance, has the passage of the ordinance changed the situation? The ordinance does no more than express the opinion of the city commissioners that the contract of December 22, 1911 was (1) ultra vires in its inception and for that reason null and void, and (2) that the plaintiff had breached it by failing to give the service required and an election to rescind. It is manifest that the courts and not the commission must determine between the parties whether or not the original contract is ultra vires, and whether or not it has been breached, as claimed by the commissioners. If it was valid in its inception, and has not been broken subsequently by the plaintiff, the declaration of the commissioners, contained in the ordinance, to the contrary, cannot make it invalid. On the other hand, if it was ultra vires when made, or has been since broken by the plaintiff, it would be just as void in the absence of such a declaratory ordinance. The ordinance, at most, expressed the election of the commissioners to rescind. The burden was on them after, just as it was before, the passage of the ordinance, either to show the original invalidity of the ordinance, or subsequent breach by the plaintiff. Rescission was not even a condition precedent to action, legal or otherwise, on the part of the city, based on the invalidity of the contract. The passage of such an ordinance, merely declaratory in its nature, did not change the situation or the attitude of the parties to each other, or afford the plaintiff any ground for injunctive relief, if it had none before; and, if the subscribers could not have been enjoined from refusing to pay in the absence of such an ordinance, they should not be after and because of its enactment.

My opinion is that the bill does not make out a case for the granting of an injunction pending the final hearing, because it fails to show any state legislation impairing the obligation of the contract of December 22, 1911. In view of this conclusion, it is not necessary to pass upon the validity of that contract, or the obligation upon the city

and its inhabitants, by virtue of it, to respect the rates provided in it; and the solution of these questions will be best determined upon the final hearing, if it then appears that the bill contains equity.