James & Deborah PRICE, Parents and
Natural Guardians of Megan Price,
a Minor

v.

PENNSYLVANIA PROP. & CAS. INS.
GUARANTY ASS'N, et al.

No. CIV. A. 01–CV–1073.

United States District Court,
E.D. Pennsylvania.

June 6, 2001.

Robert E. Slota, Jr., Law Offices of Robert E. Slota, Bryn Mawr, PA, for James Price, Deborah Price, Parents and Natural Guardians of Megan Price, a Minor, Plaintiffs.

Lise Luborsky, Britt, Hankins, Schaible & Moughan, Philadelphia, PA, for Pennsylvania Property and Casualty Insurance Guaranty Association, Homer A. Rhule, Defendants.

### ORDER—MEMORANDUM

PADOVA, District Judge.

AND NOW, this 5th day of June, 2001, upon consideration of Defendants' Motion to Dismiss (Doc. No. 4), and all responsive briefing, it is hereby ordered that said Motion is granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] The Clerk of Court shall close this case for statistical purposes.

The Complaint alleges the following facts. In 1994, Plaintiffs sued several doctors for medical malpractice in the Philadelphia County Court of Common Pleas in connection with injuries suffered by Megan Price from deficient prenatal and obstetric care. At the time of trial, Megan Price's medical expenses were in excess of $800,000 and were paid by James Price's health insurance. The action eventually settled for $3.1 million, $2.5 million of which was paid by Pennsylvania's Medical Professional Liability Catastrophe Loss Fund. Defendant Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA") is presently the primary malpractice insurer for several of the doctor defendants due to the insolvency of their original insurer.[2] PPCIGA has refused to pay its $600,000 share of the settlement on the ground that 40 Pa. Cons. Stat. § 991.1817(a) permits it to offset the amounts owed under the settlement by the amount of money Plaintiffs received from their own health insurance. The settlement agreement provides that PPCIGA is obliged to pay $600,000 to Plaintiffs subject to a judicial determination of PPCIGA's right to offset.[3]

1. A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

2. Defendant Homer A. Rhule is PPCIGA's executive director.

3. Defendants submit the settlement agreement as an exhibit to the instant Motion. The Court may consider it without converting the Motion into one for summary judgment since the Complaint explicitly relies upon it. *In re Burlington Coat Factory Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997). The settlement agreement provides:

 The amount to be paid by [Defendant] is claimed to be subject to "Non-duplication of Recovery" (40 P.S. § 991.1817(a) ...). Therefore, the undersigned [Plaintiffs] here-

Plaintiffs assert two counts. Count One is brought pursuant to 42 U.S.C. § 1983 and claims that Defendants' assertion of the applicability of the statutory offset violates their Fourteenth Amendment right to procedural and substantive due process, as well as the Contract Clause. Count Two seeks declaratory judgment against Defendants' right to apply the statutory offset to amounts owed under the settlement agreement. Defendants argue that the Complaint fails to state a cause of action under § 1983. In the alternative, Defendants seek a stay of this action pending completion of a state action in which the parties are litigating the applicability of the statutory offset provision.

■ Section 1983 of Title 42 of the United States Code provides a remedy against "any person" who, under the color of law, deprives another of his constitutional rights. 42 U.S.C. § 1983 (1994); *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (3d Cir.1993). To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir.1997). For the purposes of this Motion, Defendant does not dispute that it is a state actor. The salient question for decision therefore is whether Plaintiffs have suc-

cessfully alleged a deprivation of a federally protected right. For the following reasons, the Court concludes that they have not.

1. *Contract Clause*

■ Count One alleges that Defendants, through the assertion of the applicability of the offset statute, impaired Plaintiffs' rights under insurance contracts[4] and the settlement agreement in violation of the Contracts Clause of the United States Constitution, Article I section 10. The United States Constitution provides, in relevant part, that "[n]o state shall enter into any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. To allege a claim under the Contract Clause, the plaintiff must allege that: (1) a contractual relationship existed; (2) a change in a law occurred that impaired the contractual relationship; and (3) the impairment is substantial. *Transp. Workers Union of Am., Local 290 v. Southeastern Pa. Transp. Auth.*, 145 F.3d 619, 621 (3d Cir.1998) (citing *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). Although a contractual relationship between Plaintiffs and PPCIGA is alleged, the Complaint's allegations fail to establish that a state law im-

---

by agrees to accept the statutory primary limit of [the settling doctors], subject to such offset provisions of the Pennsylvania Property and Casualty Insurance Guaranty Association Act as shall be determined by a Court of competent jurisdiction. If it should be finally determined by the Court that the offset provision ... is invalid otherwise or not applicable to reduce the undersigned's cash recover, [Defendant] shall promptly pay to the undersigned the full limit of its liability...
Def. Ex. 2 at 3.

4. The Complaint does not specify what contracts other than the settlement agreement

were allegedly impaired. *See* Compl. ¶ 23(a) ("the defendants ... violated plaintiff's Constitutional rights by, ... engaging in acts or omissions which they knew would impair plaintiff's rights under various insurance contracts and the settlement agreement in violation of Article I Section 10 .. of the United States Constitution."). The only other contracts to which Plaintiffs were parties explicitly mentioned in the Complaint are James Price's contracts for health insurance. Compl. ¶ 11. The Court assumes that these health insurance contracts are the "various insurance contracts" referenced in paragraph 23 of the Complaint.

paired the relationship or that the relationship was even impaired.

 "In order to come within the provision of the Constitution of the United States [and the Constitution of Pennsylvania] which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired but it must have been impaired by a law of the State. The prohibition is aimed at the legislative power of the State." *New Orleans Waterworks Co. v. Louisiana Sugar Refining Co.*, 125 U.S. 18, 30, 8 S.Ct. 741, 31 L.Ed. 607 (1888). Thus, a court must "first consider whether ... there is shown on [the] record any act of state legislation." *St. Paul Gaslight Co. v. City of St. Paul*, 181 U.S. 142, 147, 21 S.Ct. 575, 45 L.Ed. 788 (1901). Acts of state legislation include not only statutes enacted by the legislature or constitutions enacted by the people of a state, but also by-laws and ordinances of municipal corporations that constitute "an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality." *New Orleans Water–Works Co.*, 125 U.S. at 30–31, 8 S.Ct. 741. Legislative power is defined as the lawmaking power of a legislative body involving actions that relate to subjects of permanent or general character. *See Transp. Workers Union of Am., Local 290 v. SEPTA*, No. Civ.A.96–0814, 1996 WL 420826, at *3 (E.D.Pa. July 25, 1996) (citing Black's Law Dictionary 899–900) (6th ed.1990, and determining that a SEPTA resolution modifying an employee benefit plan did not constitute legislative action). Defendants' opinion and assertion of a legal argument on the interpretation of a statute [5] does not constitute an exercise of legislative power. Neither Defendant is a legislative body, and neither Defendant's opinion has the force of law similar to a statute, or a municipal ordinance or bylaw.

 Even if Defendants' interpretation of the offset provision was a legislative act, the Complaint's allegations fail to establish that the contractual relationships between Plaintiffs and Defendants, or Plaintiffs and other insurers, were substantially impaired. The settlement agreement expressly anticipates a judicial determination of the amount due and the applicability of the offset statute. Thus, Defendants' assertion of a legal argument with respect to the applicability of the statutory offset could not impair the settlement agreement. Furthermore, the Court fails to see how Defendants' assertion of the applicability of the offset provision could have impaired Plaintiffs' health insurance contracts since Plaintiffs have already received payment for the past medical expenses under those contracts. *See* Compl. ¶ 11.

### 2. *Due Process*

Count One also alleges that Defendants' assertion of the applicability of the offset statute deprives Plaintiffs of their property interest in the settlement agreement and other insurance contracts in violation of due process under the Fourteenth Amendment .[6] Compl. ¶ 23(b), (c), (d). The Fourteenth Amendment to the United States

---

5. The Complaint alleges that "[I]t is [Defendant's] policy, custom, practice and/or procedure to claim such set-offs in response to covered claims in all cases in which the injured party received payment of medical bills and expenses from third parties." Compl. ¶ 17.

6. As explained in footnote 4 supra, the Court assumes that paragraphs 23(b), (c), and (d) of the Complaint references James Price's health insurance contracts. '

Constitution protects a person from state action that deprives her of "life, liberty or property, without due process of law." U.S. Const. am. XIV § 1. While this constitutional provision facially speaks only of the adequacy of state procedures, the clause also has a substantive component. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 138 (3d Cir.2000) (citing *Planned Parenthood of S.E. Pa. v. Casey*, 505 U.S. 833, 846–47, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)). Plaintiffs allege violations of both substantive and procedural due process.

The essential principle of procedural due process is that a deprivation of life, liberty or property should be preceded by "notice and opportunity for a hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). For procedural due process to apply, the plaintiff must establish a liberty or property interest that was burdened by state action without a fair hearing because she did not receive either adequate notice or a reasonable opportunity to be heard. *Deibler v.. City of Rehoboth Beach*, 790 F.2d 328, 331 (3d Cir.1986) (citing *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)); *see also Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998).

 Assuming that Plaintiffs have a protectable property interest in the proceeds of the settlement agreement, the Court concludes that Plaintiffs can prove no set of facts establishing that their interest has been burdened by state action without a fair hearing. Plaintiffs here do not contest the constitutionality of the statutory offset provision itself, but rather contest PPCIGA's assertion that the offset provision applies to their claim. The settlement agreement into which Plaintiff voluntarily entered expressly provides for a judicial determination of PPCIGA's right to apply the statutory offset to the amount owed under the agreement. Any refusal to pay the full settlement amount, therefore, will be preceded by litigation in a court of competent jurisdiction. The opportunity to pursue the claim for payment in court satisfies procedural due process. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 121 S.Ct. 1446, 149 L.Ed.2d 391, (2001). Accordingly, Plaintiffs' claim under procedural due process is unsustainable.

 Substantive due process may apply when a plaintiff challenges the arbitrary exercise of power by a government official through a non-legislative act. *Nicholas*, 227 F.3d at 139. Generally, the state may not take away a property interest that falls within the scope of substantive due process for reasons that are "arbitrary, irrational, or tainted by improper motive," or by means of conduct so egregious that it "shocks the conscience." *Id.* (quotations omitted.) To prevail on such a substantive due process claim, a plaintiff must establish possession of a protected property interest. *Id.* at 139–40 (citing *Woodwind Estates Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir.2000)). However, "[n]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Id.* (quoting *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir.1989)). Rather, successful claims under substantive due process require deprivation of a property interest that is fundamental under the United States Constitution. *Id.* at 142. Fundamental property interests are those that are "deeply rooted in the Nation's history and traditions," or are "implicit in the concept of ordered liberty

like personal choice in matters of marriage and family." *Id.* at 143. Property interests created by entitlements under state law, however, are insufficient to be deemed fundamental. *Id.* at 140–41. Plaintiffs' right to payment by PPCIGA is created by state law and as such is not a fundamental interest subject to substantive due process. *See* 40 Pa. Cons.Stat. Ann. § 991.1801 (West 2001); Compl. ¶ 2.

For these reasons, Defendants' Motion is granted and the Complaint is dismissed.