The **PENNSYLVANIA WORKERS' COMPENSATION JUDGES PROFESSIONAL ASSOCIATION, Ada Guyton, Carl Lorine, Todd Seelig, Susan Kelley and Nancy Goodwin, Petitioners**

v.

**EXECUTIVE BOARD OF the COMMONWEALTH of Pennsylvania, Governor Tom Corbett, George Greig, Michael Consedine, Sheri Phillips, Barry Schoch, Ronald Tomalis, Daniel Meuser and Department of Labor and Industry of the Commonwealth of Pennsylvania, Respondents.**

Commonwealth Court of Pennsylvania.

Argued April 5, 2011.

Decided Jan. 19, 2012.

---

Moshe Zvi Marvit, John E. Stember and Emily E. Town, Pittsburgh, for petitioners.

Kenneth L. Joel, Senior Deputy Attorney General, Harrisburg, for respondents.

## OPINION

PER CURIAM.

Presently before the court are preliminary objections filed by the Executive Board of the Commonwealth of Pennsylvania and the Department of Labor and Industry (collectively referred to as the Executive Board)[1] to the First Amended Petition for Review filed in our original jurisdiction by the Pennsylvania Workers' Compensation Judges Professional Association (Association) seeking declaratory and injunctive relief.[2]

### Background

The following summary is drawn from the allegations in the Association's first amended petition for review. Since 1996, Workers' Compensation Judges (WCJs) have been classified as management level employees and, hence, are not represented by a union and do not engage in collective bargaining. Every four years, the various unions that represent other Commonwealth employees engage in collective bargaining with the Governor's office with respect to a new collective bargaining agreement (CBA).[3] This collective bargaining invariably involves wages and general pay increases, which result in a speci-

---

1. The Executive Board is chaired by the Governor and includes six other heads of administrative departments to be designated by the Governor. Section 204 of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 64. Section 709(a) of the Code authorizes the Executive Board to, *inter alia,* standardize all titles, salaries, and wages of persons employed by the administrative departments. 71 P.S. § 249(a). None of the named respondents currently serve in state government.

2. The Association originally filed a class action complaint in this Court's original jurisdiction, but later filed an amended pleading entitled "First Amended Petition for Review" and addressed to our original jurisdiction. The above-named individual petitioners are Workers' Compensation Judges in the Commonwealth and members of the Association.

3. The most recent CBA ran from June 1, 2007, to June 30, 2011.

fied percentage increase in each longevity step within each pay scale group of the Commonwealth's pay plans.

Each year, the Executive Board issues a resolution authorizing payment of any negotiated increase for union employees. At the same time, the Executive Board also issues a resolution to "pass on" the same increase to management and other non-union employees. On March 18, 2008, the Executive Board issued a resolution to "pass on" to management employees, including WCJs, a 3% general pay increase in July 2008 and a one-step longevity increment in January 2009, which equates to a pay increase of 2.25%, provided that they were employed continuously since January 31, 2008.[4] In the case of a WCJ who has

---

4. The March 18, 2008, provided, in pertinent part, as follows:

> WHEREAS, to provide comparability with employees covered by most labor agreements and memoranda of understanding, management employees and other employees in employee units ... should receive a general pay increase of three percent (3%), effective July 1, 2008; and
> WHEREAS, to provide comparability with employees covered by most labor agreements and memoranda of understanding, management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule, and who have been employed continuously by the Commonwealth since January 31, 2008, should be eligible to receive a one step longevity increment effective on the first day of the first full pay period in January 2009; and
> WHEREAS, to provide comparability with employees covered by most labor agreements and memoranda of understanding, management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule, who are at or above the maximum salary for their pay range, and are otherwise eligible to receive longevity increments, should receive the longevity increment in the form of a one-time cash payment of 2.25% of their annual salary in effect on the day preceding the first day of the first full pay period in January 2009, rounded to the nearest dollar; and
>    . . .
> Therefore, be it
> RESOLVED, That the attached July 1, 2008, 37.5 hour and 40 hour Standard Pay Schedule (Pay Scale Type ST) in Appendix B reflects a three percent (3%) general pay increase, applied to the hourly rates in all pay scale levels; and, be it further
> RESOLVED, That management employees and other employees in employee units ...

who are in an active pay status shall be placed onto the July 1, 2008, Standard Pay Schedule (Pay Scale Type ST) at the pay scale group and pay scale level that was in effect on the day preceding the effective date of the Schedule; and, be it further
> RESOLVED, That management employees and other employees in employee units ... whose salary exceeds the maximum of the employee's applicable pay scale group before and after the general pay increase shall receive, effective July 1, 2008, a general pay increase in the form of a one-time cash payment of three percent (3%) of their annual salary in effect on the day preceding the general pay increase effective date, rounded to the nearest dollar; and be it further
>    . . .
> RESOLVED, That management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule, and who have been employed continuously by the Commonwealth since January 31, 2008, shall be eligible to receive a one step longevity increment effective on the first day of the first full pay period in January 2009; and; and, be it further
> RESOLVED, That management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule, who are at or above the maximum salary for their pay range or are assigned to a Governor's Office controlled pay scale level, and are otherwise eligible to receive longevity increments, shall receive the longevity increment outlined above in the form of a one-time cash payment of 2.25% of their annual salary in effect on the day preceding the first day of the first full pay period in January 2009, rounded to the nearest dollar; and, be it further
>    . . .

reached the maximum salary in his/her pay range, the resolution promised a lump sum equal to 2.25% of the WCJ's annual salary in effect on the day preceding the first day of the first full pay period in 2009. The WCJs and other management employees received the 3% general pay increase in July 2008.

However, on December 19, 2008, the Executive Board adopted a new resolution rescinding the January 2009, one-step longevity increment or lump sum payment contained in the March resolution, stating that "fiscal challenges resulting from reve-nue falling significantly below budgetary projections during Fiscal Year 2008–09, have prompted the need for cost savings measures to address these fiscal chal-lenges."[5] In response, the Association filed a class action complaint against the Executive Board in this Court's original jurisdiction on December 17, 2010, fol-lowed by the Association's First Amended Petition for Review.[6] In this petition, the Association set forth the following counts and requests for relief: Counts I and II—Declaratory Relief—seeking a declaration that the December resolution violated the Contract Clauses of the United States and

> RESOLVED, That this resolution shall be made effective July 1, 2008.
>
> A copy of the complete resolution can be found at Exhibit 5 of the Association's First Amended Petition for Review.

5. The December 19, 2008, resolution provided as follows:

> WHEREAS, this Board, in Resolution # CN–08–069, dated March 18, 2008, provided that management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule (Pay Scale Type ST), and who have been employed continuously by the Commonwealth since January 31, 2008, be eligible to receive a one step longevity increment effective on the first day of the first full pay period in January 2009; and
>
> WHEREAS, this Board, in Resolution # CN–08–069, dated March 18, 2008, further provided that management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule (Pay Scale Type ST), who are at or above the maximum salary for their pay range, and are otherwise eligible to receive longevity increments, receive the longevity increment in the form of a one-time cash payment of 2.25% of their annual salary in effect on the day preceding the first day of the first full pay period in January 2009, rounded to the nearest dollar; and
>
> WHEREAS, fiscal challenges resulting from revenue falling significantly below budgetary projections during Fiscal Year 2008–09, have prompted the need for cost savings measures to address these fiscal challenges;

> Therefore, be it
>
> RESOLVED, That all sections of Resolution # CN–08–069 that authorize management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule (Pay Scale Type ST), and who have been employed continuously by the Commonwealth since January 31, 2008, to receive a one step longevity increment effective on the first day of the first full pay period in January 2009, are hereby rescinded; and, be it further
>
> RESOLVED, That all sections of Resolution # CN–08–069 that authorize management employees and other employees in employee units ... who are compensated on the July 1, 2008, Standard Pay Schedule (Pay Scale Type ST), who are at or above the maximum salary for their pay range or are assigned to a Governor's Office controlled pay scale level, and are otherwise eligible to receive longevity increments, to receive longevity increment in the form of a one-time cash payment of 2.25% of their annual salary in effect on the day preceding the first day of the first full pay period in January 2009, rounded to the nearest dollar, are hereby rescinded; and, be it further
>
> RESOLVED, That this resolution shall be made effective immediately.
>
> A copy of this resolution can be found at Exhibit 6 of the Association's First Amended Petition for Review.

6. The Association noted that the individual members of the Executive Board were being sued in their official capacity only.

Pennsylvania Constitutions; Counts III and IV—Declaratory Relief—seeking a declaration that the December resolution violated the Taking Clauses of the United States and Pennsylvania Constitutions; and Counts V and VI—Declaratory Relief—seeking a declaration that the December resolution violated 42 U.S.C. § 1983.

The Association sought further relief as follows: a permanent injunction barring implementation of the December resolution; certification of the proposed class (all individuals employed continuously as WCJs from January 31, 2008, until the first day of the first full pay period in January 2009); an order directing the Executive Board to make all class members whole; and an award of attorney fees and costs.

■■■ On January 24, 2011, the Executive Board filed preliminary objections in the nature of a demurrer alleging as follows:

the Association's 42 U.S.C. § 1983 claims must be dismissed because section 1983 provides for a cause of action only against "persons" acting under color of state law and individuals sued in their official capacity are not "persons" for purposes of that section;

the Association cannot bring direct claims under the Contract or Taking Clauses of the United States Constitution against the Executive Board;

even assuming that these claims were procedurally proper, the claims are without merit because a public employee has no personal or property right to employment, the Executive Board is not statutorily prevented from modifying salaries, the March resolution created no vested rights in the salary increases, the March resolution did not create any contractual or property rights in favor of the Association, and the December resolution was not a legislative act and, as such, did not implicate a viable Contract Clause claim; assuming that a contract did exist, this Court lacks jurisdiction because the Association's sole relief is for breach of contract, which must be brought before the Board of Claims and such a claim is time barred as it was not filed within 60 days of the December 19, 2008, resolution;

the Association's claims are barred by the doctrine of sovereign immunity; and

there is no private right of action for money damages under the Pennsylvania Constitution.

The Executive Board seeks an order sustaining its preliminary objections and dismissing with prejudice the Association's § 1983 claims and its claims premised on the Contract and Taking Clauses of the United States and Pennsylvania Constitutions.[7]

*Discussion*

*§ 1983*

■■ The Executive Board argues that the Association's § 1983 claims must be dismissed because § 1983 provides for a cause of action only against "persons" acting under color of state law, and individu-

---

7. In reviewing preliminary objections, we are required to accept as true all well-pled averments set forth in the pleadings and all inferences reasonably deducible therefrom. *Pennsylvania Builders Association v. Department of Labor & Industry*, 4 A.3d 215 (Pa.Cmwlth. 2010). However, we need not accept as true conclusions of law, unwarranted inferences, argumentative assertions or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit a different result; where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections. *Id.*

als sued in their official capacity are not "persons" for purposes of that section. We agree.

This Court has repeatedly held that the Commonwealth, a department of the Commonwealth, and officials acting in their official capacities are not "persons" under 42 U.S.C. § 1983. *Association of Settlement Companies v. Department of Banking*, 977 A.2d 1257 (Pa.Cmwlth.2009) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) in support of its holding that the Department of Banking is not a "person" to whom 42 U.S.C. § 1983 may apply); *Faust v. Department of Revenue*, 140 Pa.Cmwlth. 389, 592 A.2d 835 (1991), *appeal denied*, 530 Pa. 647, 607 A.2d 257 (1992) (neither the Commonwealth nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983).

■ Moreover, to state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the United States Constitution and the laws of the United States and (2) show that the alleged deprivation was committed by a person acting under the color of state law. *Owens v. Shannon*, 808 A.2d 607 (Pa.Cmwlth.2002). The Association claims a contract right with respect to the March resolution providing WCJs with a 3% general pay increase in July 2008 and a one-step longevity increment in January 2009. However, the Association has failed to sufficiently plead the presence of any such contractual right.

### No Enforceable Contract Right

■ In order for a contract to be formed, there must be an offer, acceptance, and an exchange of consideration. *Beaver Dam Outdoors Club v. Hazleton City Authority*, 944 A.2d 97 (Pa.Cmwlth. 2008). Consideration is sufficient when it confers a benefit upon the promisor or a detriment upon the promisee, i.e., there is a bargained for exchange. *Pyle v. Department of Public Welfare*, 730 A.2d 1046 (Pa.Cmwlth.1999). In the present case, the March resolution was not bargained for because the Association incurred no detriment. In other words, the Association offered no consideration, and without consideration, there is no enforceable contract right.

### Impairment of Contract

■ The Contract Clause of the United States Constitution provides, in relevant part, that "[n]o state shall enter into any ... Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The Contract Clause of the Pennsylvania Constitution similarly provides that "[n]o ... law impairing the obligation of contracts ... shall be passed." Pa. Const. art. I, § 17. Our Pennsylvania Supreme Court has held that the Contract Clause of the Pennsylvania Constitution is generally to be applied in the same manner as its federal counterpart. *First Nat'l Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 528 A.2d 134 (1987).

It is long settled law within this Commonwealth that the constitutional prohibition against the impairment of contracts protects the permanence of a salary and, to the contrary, the clause does not prohibit the abrogation of the salary of a public officer during the term of his office. *Barker v. City of Pittsburgh*, 4 Pa. 49 (1846) (holding that there is no contract, express or implied, for the permanence of a salary and that the city of Pittsburgh can abrogate the salary of an elected official before the expiration of his term); *see also Wagoner v. Philadelphia*, 215 Pa. 379, 64 A. 557 (1906) (holding that ordinance that fixed the salaries of bricklayers was not within the nature of a contract between the city of Philadelphia and the bricklay-

ers).[8] Hence, the Contract Clause did not preclude the Executive Board from adopting the December resolution rescinding the January 2009, one-step longevity increment or lump sum payment contained in the March resolution.

### Resolutions were not Legislative Actions

■■■ A court makes three threshold inquiries in evaluating a Contract Clause claim: (1) whether there is a contractual relationship; (2) whether a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial. *Transport Workers Union of America, Local 290 v. Southeastern Pennsylvania Transportation Authority*, 145 F.3d 619 (3d Cir.1998). Significantly, the Contract Clause "prohibition is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *New Orleans Waterworks Company v. Louisiana Sugar Refining Company*, 125 U.S. 18, 30, 8 S.Ct. 741, 31 L.Ed. 607 (1888). Thus, a court must first consider whether there is shown on the record any act of state legislation. *St.*

*Paul Gaslight Co. v. St. Paul*, 181 U.S. 142, 21 S.Ct. 575, 45 L.Ed. 788 (1901).

■■■ Simply stated, an act of state legislation requires an act of legislative power. Legislative power has been defined as the lawmaking power of a legislative body that relates to subjects of a permanent or general character. *Price v. Pennsylvania Prop. & Cas. Ins. Guaranty Ass'n*, 158 F.Supp.2d 547 (E.D.Pa.2001). While such lawmaking power may, for purposes of the Contract Clause, be expressed in a form other than a statute such as an ordinance of a municipal corporation or political subdivision, mere administrative actions do not fall within the ambit of the constitutional prohibition. *See New Orleans Waterworks Company* (ordinance of New Orleans City Council granting the Louisiana Sugar Refining Company permission to ship Mississippi River water directly to its plant notwithstanding state charter grant of exclusive water supply rights to the New Orleans Waterworks Company held by United States Supreme Court to be a local administrative act and hence not state action in violation of the Contract Clause);[9] *see also Transport Workers Un-*

---

8. An exception, however, applies to Justices, Judges, and Justices of the Peace, whose salaries are constitutionally protected from reduction during their terms of office. Pa. Const. art. V, § 16. *See also Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918 (2006) (declaring as unconstitutional an act of the General Assembly which sought to repeal a prior act that had increased judicial salaries).

9. In *New Orleans Waterworks Company*, the state charter of Louisiana had granted New Orleans Waterworks Company (Waterworks) the exclusive privilege of supplying the city of New Orleans and its occupants with water from the Mississippi River. Louisiana Sugar Refining Company (the Refinery) later sought permission from the city to lay pipes from the river to its refinery to supply its own water. The New Orleans City Council passed an ordinance granting the Refinery's request and

Waterworks filed a petition with the local trial court seeking to restrain the laying of these pipes and alleging that the ordinance impaired the obligation of the contract contained in the charter granting it the exclusive privilege of supplying water.

A jury trial was held before the trial court and the jury ultimately ruled in favor of the Refinery. The trial court thereafter entered judgment in the Refinery's favor and dismissed Waterworks' petition. Waterworks appealed to the Supreme Court of Louisiana, which affirmed the judgment, concluding that the ordinance was not in violation of the contract contained in the charter. Waterworks appealed to our United States Supreme Court. The Court dismissed the appeal concluding that it lacked jurisdiction because no legislative act of the state had been upheld. The Court held that the ordinance at issue involved no exercise of legislative power and

ion of America, Local 290 v. Southeastern Pennsylvania Transportation Authority, Civ. A. No. 96–0814, 1996 WL 420826, 1996 U.S. Dist. LEXIS 10608 (E.D.Pa.1996), aff'd, 145 F.3d 619 (3d Cir.1998).[10]

In other cases analyzing the Contract Clause issue, federal courts have held that a resolution of the Grand River Dam Authority increasing rates for water and steam was not a legislative action, *Grand River Dam Authority v. Nat'l Gypsum Co.*, 352 F.2d 130 (10th Cir.1965), *cert. denied*, 383 U.S. 907, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966); a resolution passed by the Port Authority of New York authorizing the construction and lease of a cold storage facility in New Jersey was not a legislative action, *Nat'l Cold Storage Co. v. Port of New York Authority*, 286 F.Supp. 1016 (S.D.N.Y.1968); a resolution of the

Board of Commissioners of the Chicago Park District cancelling all permit agreements for rock music concerts for the year 1970 was not a legislative action, *Contemporary Music Group, Inc. v. Chicago Park District*, 343 F.Supp. 505 (N.D.Ill.1972); a resolution of the Southeastern Pennsylvania Transportation Authority modifying an employee benefit plan to require enrolled employees to contribute a percentage of their salary was not a legislative action, *Transport Workers Union of America, Local 290;* and a resolution of the Port Authority of Allegheny County amending the terms of a pension plan was not a legislative action, *Skoutelas v. Port Authority of Allegheny County*, No. 2:07CV1077, 2008 WL 1773876, 2008 U.S. Dist. LEXIS 31704 (W.D.Pa.2008).

the decision of the Supreme Court of Louisiana was not based to any degree upon the United States Constitution or any state law enacted subsequent to the charter.

The Court explained that in order to present a valid Contract Clause claim, not only must the obligation of a contract have been impaired, but it must have been impaired by a law of the state. The Court noted, however, that a law of the state, in order to come within the constitutional prohibition, need not be in the form of a statute enacted by the state legislature or in the form of a state constitution. Rather, the Court indicated that any enactment to which the state gives the force of law, such as a by-law or ordinance of a municipal corporation, may be considered a law for purposes of the prohibition. However, the Court characterized the city's permission in this case, albeit in the form of an ordinance, as merely a license. In so doing, the Court referenced a portion of the city's charter granting city council the authority to permit any person contiguous to the river the privilege of laying pipes. In other words, the charter enacted by the legislature established the rule/law, but committed its execution to city council, i.e., city council would decide whether a person met the definition under the rule. The Court described the City's authority in this regard as administrative, not legislative.

10. In *Transport Workers Union of America*, the Union represented 426 first-level supervisors at the Southeastern Pennsylvania Transportation Authority (SEPTA). In 1965, SEPTA created a retirement plan for supervisory, administrative, and management employees (SAM Plan). The SAM Plan provided that no employee contributions could be required or permitted before October 8, 1995, and none were. In September 1995, the SEPTA Board approved a resolution requiring employee contributions in the future. The Union, on behalf of its members, filed a complaint with the United States District Court for the Eastern District of Pennsylvania (District Court) alleging that the resolution violated the Contract Clauses of the United States and Pennsylvania Constitutions. The Union and SEPTA each filed motions for summary judgment. The District Court granted SEPTA's motion and denied the Union's motion concluding that the resolution at issue did not constitute an exercise of legislative power and was not a "law" for purposes of applying the Contract Clauses. The District Court explained that the resolution only addresses the SAM Plan document, a contract between SEPTA and the SAM Plan employees and could not be enforced against the public. The District Court noted that the issue in this case was simply breach of contract and not an impairment of contract by legislative action.

A review of the above cases reveals a general pattern of reasoning underlying the federal courts' conclusions that the resolutions at issue did not constitute legislative action. In those cases, the federal courts reasoned that the resolutions related only to a specific subject and a specific group of employees and not to a subject of a permanent or general character, the resolutions related to a particular situation for a limited period of time and did not possess any of the characteristics of a law of general application, and/or the resolutions were merely the method by which a body corporate conducted its affairs as a functioning entity. This reasoning can be equally applied to the Executive Board's March and December resolutions in the present case.

The resolutions only applied to a specific subject and a specific group of employees for a distinct period of time, i.e., a 3% general pay increase in July 2008 and a one-step longevity increment or lump sum payment in January 2009 for management and other non-union employees, including WCJs. Additionally, the resolutions were simply the method by which the Executive Board performed its statutory duty. Moreover, the actions of the Executive Board are consistent with the typical actions of management personnel, i.e., the setting of salaries for those under their supervision. *See, e.g., Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board*, 603 Pa. 482, 985 A.2d 697 (2009) (holding that a county salary board acts in an administrative capacity in fixing the salaries and compensation of county employees); *Franklin County Prison Board v. Pennsylvania Labor Relations Board*, 491 Pa. 50, 417 A.2d 1138 (1980) (holding that the fixing of salaries by a county salary board was not a legislative enactment). Thus, in concordance with the decisions noted above, we must conclude that the March and December resolutions did not constitute legislative actions so as to implicate the provisions of the Contract Clause of the United States or Pennsylvania Constitutions.

### *U.S. Const. amend. V. and Pa. Const. art. I, § 10*

■ Finally, we conclude that the Association's claims under the Takings Clause of the United States and Pennsylvania Constitutions also must fail.

■ The Takings Clause emanates from the last clause of the Fifth Amendment to the United States Constitution providing that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The Takings Clause of the Pennsylvania Constitution similarly provides that private property shall not "be taken or applied to public use, without authority of law and without just compensation being first made or secured." Pa. Const. art. I, § 10. Both constitutional provisions are interpreted using the same standards and framework. *Smith v. Cortes*, 879 A.2d 382 (Pa.Cmwlth. 2005), *aff'd*, 587 Pa. 506, 901 A.2d 980 (2006) (recognizing that our Pennsylvania Supreme Court has consistently relied upon the decisions of the United States Supreme Court in resolving claims under the Takings Clause).

■ In order to succeed on its claim under the Takings Clause, the Association first would be required to establish a property right in future salaries. The Association cannot meet this burden. Under Pennsylvania law, employees are at-will and, absent a contract, may be terminated at any time for any reason or for no reason. *Stumpp v. Stroudsburg Municipal Authority*, 540 Pa. 391, 658 A.2d 333 (1995). This general rule is not abrogated just because the employee is a governmental worker since an individual does not have a *per se* right in governmental em-

ployment. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (1996). Rather, a governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or a statute. *Id.*

In the present case, it is undisputed that since 1996, WCJs have been classified as management level employees and are not subject to any CBA.[11] While section 1401(d) of the Act, 77 P.S. § 2501, provides that WCJs are subject to employment security afforded by the Civil Service Act,[12] the Civil Service Act is silent on the issue of salary and affords no protection in this regard. Hence, the Association cannot point to any employment contract or statute providing its members with a personal or property right in increased salaries and any claim under the Takings Clause of the United States or Pennsylvania Constitutions must fail.

Accordingly, the preliminary objections of the Executive Board addressed above are sustained. Having so concluded, we need not address the Executive Board's remaining preliminary objections, and we dismiss the Association's First Amended Petition for Review.

### ORDER

AND NOW, this 19th day of January, 2012, the preliminary objections filed on behalf of Respondents are hereby sustained and the First Amended Petition for Review filed by Petitioners is dismissed.

---

11. Section 1403 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350, *as amended*, 77 P.S. § 2503. This section specifically provides that WCJ's "shall be management level employes...."

12. Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.1–741.1005. The Civil Service Act essentially protects an employee from termination without just cause relating to the employee's competency and ability to perform his/her job.