# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ricardo Morales-Vasquez,         :
              Petitioner        :
                                  :    No. 253 M.D. 2019
       v.                      :
                                  :    Submitted: February 28, 2020
Pennsylvania Department of      :
Corrections,                      :
              Respondent     :

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED: July 28, 2020

In our original jurisdiction, Ricardo Morales-Vasquez (Vasquez) has filed a petition for review (PFR) in the nature of a complaint, against the Pennsylvania Department of Corrections (DOC) seeking remedies in both law and equity with regard to certain property that was allegedly confiscated from his cell located in a State Correctional Institution (SCI) by DOC employees due to suspected misconduct. In response, DOC filed Preliminary Objections (POs) in the nature of a demurrer, arguing that Vasquez has failed to state a claim upon which relief can be granted.

Vasquez is an inmate who is serving a life sentence and is currently confined at SCI-Forest. (PFR ¶¶ 1-2.) Vasquez alleges that he was subjected to "violations of his personal rights" by numerous individuals within DOC; that they were "acting under the official employment of the [DOC]"; and thus, "**in the interest in [sic]**

**justice**," Vasquez has decided to name "**the [DOC] as a whole**" as a respondent in his suit.  (PFR ¶¶ 5-6) (emphasis added).

In his PFR, Vasquez alleges that on May 18, 2018, he was housed in cell #1001, in the "Echo Bravo" unit, and on that day he returned to his cell and "came to the realization" that "someone had gone through his boxes and personal footlocker." (PFR ¶¶ 12-13.)  Vasquez brought his concern to the attention of Sergeant Bloss, who was on duty at the time, and Sergeant Bloss informed Vasquez that he had conducted a "cell inspection" while Vasquez was not in his cell.  (PFR ¶ 14.)  Vasquez alleges that Sergeant Bloss informed him that he conducted an inspection because certain items were out of place, and he thought Vasquez was "running a store" due to the large amount of food he observed.  (PFR ¶ 18.)  Vasquez explains that "running a store" violates DOC policy, and maintains that he [has] never engaged in "running a store" and did not have what he considered to be "extra food" in his cell.  (PFR ¶¶ 19-20.) Vasquez alleges that Sergeant Bloss then proceeded to go back into his cell and retrieve his personal footlocker and other boxes located underneath his bunk and, again, accused him of "running a store" due to the excessive amount of food in the cell.  (PFR ¶ 21.)

Vasquez maintains that the following day, May 19, 2018, Security Officers Caratelli and Evans entered his cell to conduct a search because of the amount of food that was previously observed in his cell.  (PFR ¶¶ 23-24.)  He alleges that he was told that a search would be performed of his cell and that anything exceeding $70.00 in value would be confiscated and he would be issued a "DC-141 Misconduct." (PFR ¶ 24.)  Vasquez maintains that he told the officers he had receipts to prove that he was merely "stocking up" and was not "running a store"; however, the officers persisted and advised him that he would be permitted to maintain $70.00 worth of

merchandise, which included tobacco products. (PFR ¶¶ 25-28.) Vasquez alleges that subsequently his cell was searched and $195.45 "worth of food" was confiscated from his cell. (PFR ¶ 33.) Vasquez alleges that later that day he was served with a "DC-141 Misconduct Report" charging him with two violations of "the Institution[']s DC-ADM 801 §1 Policy – Class 1 Charge #36 – Possession of Contraband; and, Class 1 Charge #45 – Failure to Report the [Presence] of Contraband." (PFR ¶ 35.)

Prior to the misconduct hearing, Vasquez alleges that on May 20, 2018, he submitted a "DC-135A" request seeking assistance in obtaining his property that was confiscated. (PFR ¶ 38.) He alleges that the Unit Manager, Ms. Crawthers, responded two days later explaining that Vasquez would have to "work with [s]ecurity [p]ersonal [sic] to obtain his property back." (PFR ¶ 39; Exhibit C1.) Moreover, on May 20, 2018, Vasquez alleges that he sent a letter to the Lieutenant of Security, explaining the situation and requesting the return of his property, but he was given no recourse. (PFR ¶ 40; Exhibit C2.)

Vasquez alleges that on May 23, 2018, he attended a formal misconduct hearing and pled not guilty, maintaining that he was never properly advised of a change in DOC policy resulting in the confiscation of his property. (PFR ¶ 41; Exhibit B1, D1.) Vasquez's misconduct was dismissed. *Id*. Vasquez explains that he asked the hearing examiner how he could get his property back, and was told that he would have to "handle that through security" or submit a formal grievance. (PFR ¶ 42.) Vasquez maintains that he then informed a security officer that he wanted his property back, but was told that the officer needed to consult with his superiors. (PFR ¶¶ 43-44.)

Vasquez filed a grievance pursuant to DOC Policy "DC-ADM 804" to the Grievance Coordinator, Lisa Reeher, which he alleges was denied because he failed to file the correct documentation. (PFR ¶¶ 48-50; Exhibit F1-2.) Vasquez alleges that he

3

submitted another grievance, which he maintains contained all of the necessary documentation. (PFR ¶¶ 51-53; Exhibit F3.) He alleges that this grievance was denied because it was not presented in the proper format, and concerned a misconduct charge, which was not appropriately addressed through the grievance system, but should have been addressed through the inmate discipline or administrative custody procedures. (PFR ¶ 53; Exhibit F13.) He alleges that in response he filed a "DC-135A Inmate Request to Staff Member," which was also denied. (PFR ¶¶ 54-55; Exhibit F14.) Vasquez maintains that he was advised to file an appeal through "801 [Program Review Committee] [(]PRC[)]," and did so on June 15, 2018. (PFR ¶¶ 55-56; Exhibit F14, G1.) He alleges that the PRC appeal was denied because he was not permitted to appeal a misconduct that was dismissed without prejudice, and thus, he filed an appeal to the Superintendent of SCI-Forest requesting financial relief because his edible property "ha[d] become to [sic] out-dated to be returned." (PFR ¶¶ 57-58; Exhibit G2, H1.) He points out that his appeal was dismissed as both untimely and because his misconduct was dismissed without prejudice. (PFR ¶ 59; Exhibit H2.)

Vasquez explains that he filed an appeal with DOC requesting relief in the amount of $195.45 because "all [the] food [that was] confiscated is stale and unedible [sic]." (PFR ¶ 60; Exhibit I1.) Vasquez alleges that his appeal was denied because there was no "prior record of receipt of an appeal . . . on this issue," DOC records indicate that the misconduct was dismissed without prejudice, and there is no basis for the appeal. (PFR ¶ 64; Exhibit J3.) He alleges that he was encouraged to "continue to work with DOC staff regarding his property issues." *Id*.

Under the section of the PFR titled "Facts," Vasquez alleges that he understands that he has no reasonable expectation of privacy in his cell, but he maintains that cell searches cannot be used to harass an inmate or are not justified if

4

there is no "penological [sic]" need. (PFR ¶¶ 65-66.) Vasquez alleges that DOC officers went "outside of their official duties" by looking through his cell without justification, and wrongly took possession of his property valued at $195.45. (PFR ¶¶ 67-68.) Vasquez maintains that his property was only to be held pending disposition of the hearing and that DOC staff provided him with erroneous information with regard to getting his property back. (PFR ¶¶ 69-71.)

Vasquez alleges that DOC has cost him $226.48 and violated his due process rights. (PFR ¶¶ 72-76.) Specifically, he argues that under the Fourteenth Amendment to the United States Constitution,[1] he was deprived of his property without due process, but recognizes that due process can be satisfied by the existence of adequate post-deprivation state remedies "such as the grievance systems [and] the instant tort action." (PFR ¶ 74.) Nevertheless, Vasquez maintains that his due process rights were violated because Ms. Reeher would not "accept" his grievance after numerous attempts, nor would the PRC "listen" to his appeals or explain why it never received them, and that his untimely appeals were timely. (PFR ¶ 76.)

In his "Statement of Law," Vasquez alleges that under section 8852(b) of what is known as the Sovereign Immunity Act,[2] 42 Pa. C.S. §8852(b), the General Assembly waived immunity for damages under nine specific circumstances and that the "property" exception applies in this case. (PFR ¶ 79.) Vasquez alleges that this

---

[1] The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1.

[2] 42 Pa. C.S. §§8501-8502, 8521-8564.

action is brought under section 5524(6) of the Judicial Code, 42 Pa. C.S. §5524(6),[3] and that DOC falls within the definition of a "Government Unit" and is considered a "Commonwealth party" under section 8501 of the Judicial Code, 42 Pa. C.S. §8501. (PFR ¶ 80.) Specifically, Vasquez alleges that DOC took control of his property and held it pending the disposition of his hearing, which constituted "nondelivery of [his] property" pursuant to section 5524(6) of the Judicial Code, 42 Pa. C.S. §5524(6). (PFR ¶ 85.) He also maintains that he "properly exhausted administrative remedies to the 'very best of his ability'" by continuing to file grievances and PRC appeals. (PFR ¶¶ 91-93.)

In the portion of the PFR titled "Legal Claims," Vasquez alleges that because DOC "singl[ed] [him] out for no reason, confiscate[ed] his property, and failed to return it," he is entitled to relief because DOC disregarded "facility policy, rules and regulations of the [DOC]," and otherwise violated his rights under the United States and Pennsylvania Constitutions, and section 5524(6) of the Judicial Code, 42 Pa. C.S. §5524(6). (PFR ¶ 95.) Vasquez argues that he has no adequate remedy at law. (PFR ¶ 96.) With regard to the relief sought, Vasquez requests a declaration that DOC violated his rights, a preliminary and permanent injunction precluding "retaliation" such as "harassment, frivolous misconducts, . . . 'random cell searches,' further confiscation of property [without] justification, destruction of property, transfer, isolation, work replacement, loss or late mail delivery, or [other action] not having a penological [sic] or security interest." (PFR ¶¶ 98-99.) He asks for "liquidated damages" in the amount of $195.45 and $31.03, for the cost of the confiscated items and for the copies and

---

[3] As we explain *infra*, we recognize that this section of the Judicial Code merely sets forth the limitations period for an action against "any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon execution or otherwise in his possession." 42 Pa. C.S. §5524(6). Despite his attempt to set forth a claim under section 5524(6), Vasquez recognizes that this section sets forth a limitation period of two years. (PFR ¶ 86.)

postage involved with his grievances/appeals. (PFR ¶¶ 100-101.) Finally, Vasquez requests interest, a jury trial on triable issues, costs, and any additional relief the Court deems necessary. (PFR ¶¶ 102-105.)

On June 21, 2019, in response to the PFR, DOC filed POs in the nature of demurrers. DOC argued to the extent that Vasquez is asserting a "constitutional claim under 42 U.S.C. §1983 [(Section 1983)]," he failed to state a claim because DOC is not a "person" under Section 1983 and therefore is not subject to suit. (PO ¶ 4.) DOC argued that Vasquez's intentional tort claims are barred by sovereign immunity. (PO ¶ 5.) DOC argued that to the extent that Vasquez attempted to assert a due process claim, he failed to state a claim. (PO ¶ 7.) Specifically, DOC argued that where a prison official confiscates property in an allegedly unauthorized way, due process is satisfied when there are post-deprivation remedies, which existed under DOC's grievance system and the availability of state law tort actions. (PO ¶¶ 8-10.) Finally, DOC argued that because Vasquez fails to state claims under the U.S. Constitution, he fails to state claims under the Pennsylvania Constitution as the due process requirements of the Pennsylvania Constitution are indistinguishable from the due process requirements under the Fourteenth Amendment.[4]

Vasquez filed an answer to the POs, alleging that he filed a complaint seeking redress due to the deprivations of his rights related to his property and that "[t]his is nearly a word-for-word rephrase meant [sic] of [42 Pa.C.S. §8522(b)(3),] which is one of the nine exceptions to sovereign immunity." (PO Answer ¶¶ 1-2.) Vasquez alleged that the only time sovereign immunity bars these actions is when the

---

[4] Subsequent to the filing of the POs, Vasquez filed a notice of motion for default judgment and a request for entry of default judgment which were dated June 24, 2016. This Court denied these motions as moot on July 2, 2019, because POs had been filed.

7

property "involves the use of nuclear or other radioactive equipment," and that this action is intended as a "state tort" arising under 42 Pa. C.S. §5524(6). (PO Answer ¶¶ 3-4.) Vasquez explains that he is "knowledgeable enough that if he intended to assert a claim under a [f]ederal statute such as [Section 1983] he would not have done so in this [Court] because [we] would lack jurisdiction over it and he hopes [DOC's] Counsel would refrain from such frivolous objections." (PO Answer ¶ 4.) Vasquez then goes on to make seemingly irrelevant allegations with regard to statutes of limitations and as far as this Court can discern, that under 42 Pa. C.S. §5524(6), DOC is not subject to immunity. (PO Answer ¶¶ 8-12.)

On July 23, 2019, this Court ordered that DOC's brief in support of the POs was due on or before August 22, 2019, and that Vasquez had until September 23, 2019, to file his brief in opposition. On August 22, DOC filed its brief in support of its POs. Due to numerous reasons, Vasquez requested an additional 90 days to file his brief in opposition and this Court granted his request on September 23, 2019, giving him until December 23, 2019, to file his brief. On January 6, 2020, this Court issued an order recognizing that Vasquez failed to file his brief in opposition by the extended December 23, 2019 deadline and gave him until January 21, 2020, to file a response, warning him that if he failed to do so, the Court would proceed without his brief. Because Vasquez failed to file his brief by the January 21, 2020 deadline, we are proceeding without a brief from him.

## Discussion

First, we note that Vasquez's PFR is largely unclear as to the precise nature of all the legal claims that he attempts to set forth and that he failed to file a brief in support of his claims or to otherwise clarify his legal positions. Nevertheless, as best

8

as we can discern, Vasquez's PFR sets forth the following legal claims based on the confiscation of his property. First, Vasquez sets forth a due process claim alleging that his constitutional rights were violated because DOC "singl[ed]" him out without reason, confiscated his property, and failed to return his property after numerous requests despite no misconduct being found. (PFR ¶ 95.) Second, Vasquez purports to raise a claim under section 5524(b)(6) of the Judicial Code, 42 Pa. C.S. §5524(b)(6) alleging that his rights were similarly violated. *Id.* Relatedly, it also appears that Vasquez sets forth facts tending to raise an intentional tort claim with regard to the confiscation of his property. (PFR ¶¶ 65-73.)

In reviewing preliminary objections, all material facts averred in the petition for review, and all reasonable inferences that can be drawn from them, are admitted as true. *Vattimo v. Lower Bucks Hospital, Inc.*, 465 A.2d 1231, 1232 (Pa. 1983); *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 914 A.2d 477, 479 n.2 (Pa. Cmwlth. 2007), *aff'd*, 985 A.2d 678 (Pa. 2009). However, a court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations, or expressions of opinion. *Portalatin v. Department of Corrections*, 979 A.2d 944, 947 (Pa. Cmwlth. 2009). "Preliminary objections should be sustained only in cases that are clear and free from doubt." *Pennsylvania AFL-CIO v. Commonwealth*, 757 A.2d 917, 920 (Pa. 2000).

**Due Process Claims**

With regard to his due process claim, DOC contends that to the extent Vasquez is attempting to set forth a constitutional claim, the correct vehicle to do so is

9

Section 1983,[5] and that even if he did assert a claim under Section 1983, DOC is not subject to suit thereunder. Significantly, in his answer to DOC's POs Vasquez argues that he is "knowledgeable enough that if he intended to assert a claim under a [f]ederal statute such as [Section 1983] he would not have done so in this [Court] because [we] would lack jurisdiction over it . . . ." (Answer to POs ¶ 4.) Contrary to Vasquez's assertion, the United States Supreme Court has affirmed the duty of state courts to entertain Section 1983 actions. *Howlett v. Rose*, 496 U.S. 356 (1990).[6] However, to the extent Vasquez necessarily raises a Section 1983 claim with respect to his alleged due process violations under the United States Constitution, we conclude that DOC is not subject to suit.

We begin with the plain language of Section 1983 which provides, in relevant part, that

> [e]very **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. §1983 (emphasis added).

---

[5] "Section 1983 does not create substantive rights but, rather, is the vehicle for vindicating rights conferred in the United States Constitution or in federal statutes." *Jae v. Good*, 946 A.2d 802, 809 (Pa. Cmwlth. 2008) (citing *Urbanic v. Rosenfeld*, 616 A.2d 46, 52 (Pa. Cmwlth. 1992)).

[6] Section 1983 is enforceable in a state court because "[t]he Supremacy Clause makes [the Constitution and the laws enacted under it] 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett*, 496 U.S. at 367.

Significantly, Vasquez alleged that although his "personal rights" were violated by DOC employees, who are "personally named" within the PFR, all of these employees were "acting under the official employment of DOC," and "therefore in the interest in [sic] justice [he] has decided to collectively bring this action against the DOC as a whole." (PFR ¶ 6.) Vasquez's allegation is determinative of his due process claims because this Court has explained that

> [a] state or state agency, however, is not a "person" under Section 1983 and cannot be sued under Section 1983 for violation of federal constitutional rights. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64-71 (1989); *Flagg v. International Union, Security, Police, Fire Professionals of America, Local 506*, 146 A.3d 300, 305-07 (Pa. Cmwlth. 2016); *Pennsylvania Workers' Compensation Judges Professional Association v. Executive Board of Commonwealth*, 39 A.3d 486, 493 (Pa. Cmwlth. 2012), *aff'd*, [] 66 A.3d 765 (Pa. 2013); *Association of Settlement Companies v. Department of Banking*, 977 A.2d 1257, 1264 (Pa. Cmwlth. 2009) (*en banc*); *Verrichia v. Department of Revenue*, 639 A.2d 957, 962-64 (Pa. Cmwlth. 1994). Because the DOC is a Commonwealth agency, [an inmate] as a matter of law has no cause of action against the DOC. *Will*, 491 U.S. at 64-71; *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 386-87 n.8 (Pa. Cmwlth. 2017); *Association of Settlement Companies*, 977 A.2d at 1264.

*Watkins v. Pennsylvania Department of Corrections*, 196 A.3d 272, 274-75 (Pa. Cmwlth. 2018).

Our decision in *Shore*, is instructive on this issue. There, the inmate asserted constitutional claims against DOC "as the sole respondent" under the First and Fourteenth Amendments to the United States Constitution. *Id*. at 378. We concluded that because the inmate brought federal constitutional claims admittedly against DOC

11

only, and not an officer/employee, his claims were barred by Eleventh Amendment[7] and/or traditional state immunity. *Id.* at 386 n.8.[8] As we concluded in *Shore*, we conclude here, that because Vasquez unmistakably brought this action solely against DOC, any federal constitutional claim brought pursuant to Section 1983 fails as a matter of law.

To the extent that Vasquez claims a due process violation on other grounds, we also conclude that his due process rights were not violated. DOC argues that Vasquez's due process claim should be dismissed because he has an adequate post-deprivation remedy through DOC's internal inmate grievance system or a state tort law action. In fact, Vasquez recognizes this same principle in his PFR stating,

---

[7] The Eleventh Amendment to the United States Constitution provides, in full, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[8] *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the 11th Amendment. This jurisdictional bar applies regardless of the nature of the relief sought."); *accord Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993) (concluding that injunction to restrain violation of federal law under *Ex parte Young*, 209 U.S. 123 (1908), has "no application in suits against the States and their agencies, which are barred regardless of the relief sought"); *Warren v. Pennsylvania Department of Corrections*, 616 A.2d 140, 142 (Pa. Cmwlth. 1992) (concluding that the Department is not subject to suit for constitutional violations under 42 U.S.C. §1983); *Lavia v. Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) ("Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth . . . it shares in the Commonwealth's [11th] Amendment immunity."); *see also Alden v. Maine*, 527 U.S. 706, 756-57, (1999) (holding that sovereign immunity shields States from private suits in state courts pursuant to federal causes of action); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that Section 1983 does not abrogate the States' 11th Amendment immunity); *Palmer v. Penn–Ohio Road Materials, Inc.*, 462 F. Supp. 312, 315 (W.D. Pa. 1978) (noting that Pennsylvania's sovereign immunity statute especially preserved the Commonwealth's 11th Amendment immunity); Sections 8521 and 8522 of the Judicial Code, 42 Pa.C.S. §§ 8521, 8522 (preserving the Commonwealth's sovereign immunity and waiving it for only eight specified instances of negligent conduct).

12

"unfortunately, Supreme Court precedent has determined that [d]ue [p]rocess may be satisfied by the existence of adequate post-deprivation state remedies (such as grievance systems o[r] the instant tort action)."  (PFR ¶ 74.)

To maintain a due process challenge, a party must initially establish a deprivation of a protected liberty or property interest; only if the party establishes the deprivation of a protected interest, will this Court consider what procedural mechanism is required to satisfy due process.  *Miller v. Workers' Compensation Appeal Board (Pavex, Inc.)*, 918 A.2d 809, 812 (Pa. Cmwlth. 2007).  For present purposes, we assume that DOC deprived Vasquez of a legitimate property interest and turn to the issue of whether sufficient procedural protections were available.  We again turn to our decision in *Shore*, where we explained that

> [w]hen a prison official confiscates a prisoner's property in an allegedly unauthorized way, whether it be negligently or intentionally, due process requires only the **existence** of an adequate post-deprivation remedy because it is not feasible for a prison to provide a hearing prior to taking property that is perceived to be contraband or against prison regulations. *See Hudson v. Palmer*, 468 U.S. 517, 533-34 (1984).

168 A.3d at 383 (emphasis added).  Thus, under *Shore*, as Vasquez recognizes, the only due process protection he was entitled to is a post-deprivation remedy.  In *Shore*, we went on to explain that "[i]n addressing the issue, the courts have repeatedly held that inmate grievance systems are an adequate post-deprivation remedy . . . and this includes the [DOC's] tiered grievance procedure outlined in DC-ADM 804."[9]  168 A.3d at 384.

---

[9] In a string of unreported decisions, this Court has concluded that the Department's grievance procedure in DC-ADM 804 is a constitutionally sufficient remedy with respect to inmates' claims that the Department unlawfully withheld and/or confiscated personal property. *See, e.g., Bullock v. Department of Corrections* (Pa. Cmwlth., No. 241 M.D. 2016, filed May 12, 2017) (unreported), slip op. at 9 (citing, *inter alia*, *Brown v. Wetzel* (Pa. Cmwlth., No. 318 M.D. 2015, filed September 9, 2016) (unreported); *Fennell v. N.D. Goss* (Pa. Cmwlth., No. 1198 C.D. 2015, filed February 5, 2016)

13

However, this is not the only way that Vasquez's post-deprivation due process rights may be satisfied. An inmate's ability to file a state law tort action to seek relief for the deprivation of personal property is an adequate post deprivation remedy. *Shore*, 168 A.3d at 385 n.6 (citing *Hawkins v. Coleman Hall, C.C.F.*, 453 F. App'x 208, 211 (3d Cir. 2011); *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995)). "In Pennsylvania, a tort law remedy is available for the possession and/or destruction of non-contraband personal property by virtue of section 8522(b)(3) of . . . the Sovereign Immunity Act . . . ." *Shore*, 168 A.3d at 385 n.6 (citing 42 Pa.C.S. §8522(b)(3)); *see Williams v. Stickman*, 917 A.2d 915, 917-18 (Pa. Cmwlth. 2007).

In *Fennell*, slip op. at 7, we explained that according to the United States Supreme Court's decision in *Hudson v. Palmer*, 468 U.S. 517 (1984), inmates are unable to state cognizable procedural due process claims for deprivation of property by prison officials where a state tort action is *available*. Thus, even if the inmate grievance process was constitutionally infirm, our precedent establishes that Vasquez has an adequate remedy *available* through a state law tort action.[10] Because Vasquez has this remedy available to him, we conclude that he was not deprived of his due process rights following the deprivation of his property. As such, the Court grants DOC's POs and dismisses Vasquez's due process claims. We turn our attention to Vasquez's tort claim.

Vasquez contends that he is bringing this action under "[s]ection 5524(6) of the Judicial Code," and that his claims "meet the necessary requirements to be

---

(unreported)). Under section 414(a) of this Court's Internal Operating Procedures, an unreported opinion may be cited for its persuasive value. 210 Pa. Code §69.414(a).

[10] The facts as alleged by Vasquez are that DOC attempted to thwart his efforts, or at least increase the difficulty of seeking redress through the grievance system. Because we have concluded that Vasquez's rights were not violated due to the availability of a state tort law action, we need not address these allegations further, except to caution DOC as to the serious nature of the alleged circumstances were they proven to be true.

14

'against any officer of any government unit' . . . [42 Pa.C.S. §5524(6)]." (PFR ¶¶ 80-81.)  More specifically, he argues that "because the [DOC] had taken control over [his] food and . . . transferred it to security to be held pending the disposition of his hearing where it remains despite [his] demands and the dismissal of his misconduct, the 'nondelivery [sic] of property . . . in [the goverments [sic] unit officer's] possession' requirement of [s]ection 5524(6) of the Judicial Code is met.  [42 Pa.C.S. §5524(6)]."  (PFR ¶ 85.)  Nevertheless, Vasquez points out that section 5524(6) of the Judicial Code sets forth a limitations period of two years.  (PFR ¶ 86.)

> Section 5524(6) of the Judicial Code provides, in full, that
>
> [t]he following actions and proceedings must be commenced within two years:
>
> > (6) An action against any officer of any government unit for the nonpayment of money or the nondelivery of property collected upon [] execution or otherwise in his possession.

42 Pa. C.S. §5524(6).  Contrary to Vasquez's assertions, section 5524(6) of the Judicial Code does not set forth any independent cause of action, but merely prescribes, as his pleading recognizes, the limitations period[11] for an action against "any office of any government unit for the nonpayment of money or the nondelivery of property collected upon [] execution or otherwise in his possession."  42 Pa.C.S. §5524(6).  As such, to the extent that Vasquez sets forth a claim with regard to his property under section 5524(6) of the Judicial Code, his claim fails as a matter of law.

---

[11] "[Statutes of limitations are] legislative enactments . . . expressive of the feeling of mankind that where there are wrongs to be redressed, they should be redressed without unreasonable delay, and where there are rights to be enforced, they should be enforced without unreasonable delay." *Ulakovic v. Metropolitan Life Insurance Co.*, 16 A.2d 41, 43 (Pa. 1940).

However, to the extent that Vasquez attempts to set forth a tort claim that may be subject to the statute of limitations under section 5524(6) of the Judicial Code, DOC argues that such a claim, specifically for conversion, is barred by the doctrine of sovereign immunity. Although Vasquez does not name a specific tort in his PFR, it is clear from the face of his allegations that Vasquez alleges only intentional acts, and thus, we agree with DOC that his tort claim is barred by the doctrine of sovereign immunity.

The doctrine of sovereign immunity has been reaffirmed[12] under article I, section XI of the Pennsylvania Constitution,[13] is statutorily governed by 1 Pa. C.S. §2310, and has been waived only in the instances enumerated in the Sovereign Immunity Act, 42 Pa. C.S. §8522. Section 2310 explains that the "Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. §2310. The Sovereign Immunity Act, governs waiver of sovereign immunity. Specifically,

> [s]ection 8522 of the Sovereign Immunity Act waives 'immunity as a bar to an action against Commonwealth parties, **for damages arising out of a negligent act** where the damages would be recoverable under the common law or a statute creating a cause of action if the injury [was] caused by a person not having available the defense of sovereign immunity, for specifically enumerated categories of acts.

---

[12] The doctrine of sovereign immunity existed at common law; however, our Supreme Court in *Mayle v. Pennsylvania Department of Highways*, 388 A.2d 709 (Pa. 1978), abrogated it, but the legislature subsequently reinstated it. *See* Act of September 28, 1978, P.L. 788, No. 152, §2, 42 Pa.C.S. §5110 reenacted at 42 Pa.C.S. §8522.

[13] Article I, Section XI of the Pennsylvania Constitution, in relevant part, provides that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. art. I, §11.

*Paluch v. PA Department of Corrections*, 175 A.3d 433, 437-38 (Pa. Cmwlth. 2017) (quoting 42 Pa. C.S. §8522)). Section 8501 of the Sovereign Immunity Act defines a "Commonwealth party" as "a Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa. C.S. §8501. Thus, "sovereign immunity may be overcome where the party can establish: (1) a common law or statutory cause of action under which damages could be recoverable if not for the immunity defense, and (2) the alleged negligent act falls within one of the nine specific exceptions provided in 42 Pa.C.S. §8522(b)." *Department of Corrections v. Tate*, 133 A.3d 350, 359 (Pa. Cmwlth. 2016).

However, "sovereign immunity is **not** waived for **intentional acts** committed by a Commonwealth employee acting within the scope of his or her employment." *Paluch*, 175 A.3d at 438 (emphasis added) (citing *La Frankie v. Miklich*, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992)). Thus, sovereign immunity is only waived for negligent acts, not intentional acts. Immunity is waived under section 8522(b)(3) of the Sovereign Immunity Act as follows:

> (3) Care, custody or control of personal property.—The care, custody or control of personal property in the possession or control of Commonwealth parties, including Commonwealth-owned personal property and property of persons held by a Commonwealth agency, except that the sovereign immunity of the Commonwealth is retained as a bar to actions on claims arising out of Commonwealth agency activities involving the use of nuclear and other radioactive equipment, devices and materials.

42 Pa. C.S. § 8522(b)(3). The conduct by DOC employees in this case may be activity that would fit the requirements of section 8522(b)(3); however, assuming that Vasquez has established a cause of action that entitles him to relief but for the immunity defense, Vasquez has failed to allege, implicitly or otherwise, that the conduct was **negligent**.

To the extent Vasquez makes any averment concerning the actions of DOC employees with regard to his property, he alleges intentional actions, which are clearly not actionable due to sovereign immunity. Moreover, to the extent he alleges a specific claim for conversion, DOC argues, and we agree, that such a claim is an intentional tort and DOC is immune from such a claim. Intentional tort claims that are not outside the scope of an employee's duties are barred by sovereign immunity, including "conversion." *Paluch*, 175 A.3d at 438. *See also Palmer v. Doe* (Pa. Cmwlth., No. 2451 C.D. 2015, filed May 5, 2016) (unreported), slip op. at 5-6 ("applying [the principles of sovereign immunity] the [DOC employees] are immune from [a] conversion claim"); *Stokes v. Gehr*, (Pa. Cmwlth., No. 332 C.D. 2011, filed Oct. 19, 2011) (unreported). Accordingly, we grant DOC's POs on these grounds and dismiss Vasquez's tort claims because he has not pled sufficient facts to set forth a *prima facie* case.

Finally, to the extent that Vasquez alleges that the confiscation of his property was "in complete disregard to facility policy, rules and regulations of the department of corrections," (PFR ¶95), we conclude that we do not have jurisdiction over this claim. Even though DOC has not raised this as a preliminary objection, "whenever a court discovers that it lacks jurisdiction over the subject matter or a cause of action, it is compelled to dismiss the matter under all circumstances . . . ." *Seitel Data, Ltd. v. Center Township,* 92 A.3d 851, 859 (Pa. Cmwlth. 2014) (quoting *Hughes v. Pennsylvania State Police*, 619 A.2d 390, 393 (Pa. Cmwlth. 1992)). Vasquez seems to allege that the facility failed to follow DOC policy DC-ADM 815. (PFR ¶¶ 30, 45, Exhibit E1-E5.) In *Xavier v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 331 M.D. 2016, filed February 8, 2017) (unreported), we explained that under *Bronson v. Central Office Review Committee*, 721 A.2d 357, 359-360 (Pa. 1998),

18

"unless an inmate can identify a personal or property interest . . . not limited by [DOC] regulations and which has been affected by a final decision of the [DOC]," this Court lacks original jurisdiction in matters involving internal prison proceedings.[14]  *See Shore*, 168 A.3d at 380-82.  Vasquez points to DC-ADM 815, which states that "[t]his policy is applicable to all [DOC] facilities with regard to inmate person [sic] property, basic and state issued items, inmate commissary privileges, outside purchase, and the operation of a commissary, or contracting for the operation of a commissary."  (PFR Exhibit E1.)  Obviously, this applies to Vasquez's property interests, and he has otherwise, outside of the claims addressed above, failed to identify a personal or property interest not limited by DC-ADM 815 that was affected by a final decision of DOC.  Accordingly, we do not have the requisite jurisdiction to hear this claim.[15]

---

[14] Recently, in *Williams v. Wetzel*, __ A.3d __ (Pa., No. 95 MAP 2019, filed June 16, 2020), the Pennsylvania Supreme Court reiterated this principle.  Specifically, the Court considered this Court's "original jurisdiction over prisoner litigation, where the inmate attempting to invoke the judicial process has failed to identify a constitutionally protected interest that would give rise to due-process protections." __ A.3d __, slip op. at 1.  The Court reiterated that this Court lacks original jurisdiction to entertain a prisoner's due process challenge to the actions of prison officials, where the inmate fails to assert a constitutionally protected liberty or property interest.

[15] Even if we did have jurisdiction over these claims, the failure to comply with prison policy is not a basis for a cause of action, nor do administrative rules and regulations create enforceable rights in prison inmates.  *See Rawlings v. Wetzel* (Pa. Cmwlth., No. 562 M.D. 2016, filed Oct. 20, 2017) (unreported), slip op. at 7 (citing *Africa v. Horn*, 701 A.2d 273 (Pa. Cmwlth. 1997)); *Tindell v. Department of Corrections*, 87 A.3d 1029, 1035 (Pa. Cmwlth. 2014).  We explained in *Shore* that "[i]n general, allegations that [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates."  168 A.3d at 386 (citing *Tindell*, 87 A.3d at 1035; *Bullock v. Horn*, 720 A.2d 1079, 1082 n.6 (Pa. Cmwlth. 1998)).  Thus, even though DOC did not raise it as a preliminary objection, we determine that this issue is not one over which we have jurisdiction, and thus, Vasquez's allegations that he is entitled to relief due to DOC's failure to follow facility policy are not subject to this Court's review.

## Conclusion

For the above-stated reasons, the Court sustains DOC's preliminary objections and dismisses Vasquez's petition for review.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ricardo Morales-Vasquez,           :
                Petitioner   :
                             :   No.  253 M.D. 2019
            v.                :
                             :
Pennsylvania Department of      :
Corrections,                :
                Respondent  :

## ***ORDER***

AND NOW, this 28th day of July, 2020, the preliminary objections to the petition for review filed by Ricardo Morales-Vasquez in this Court's original jurisdiction are hereby SUSTAINED and the petition for review is DISMISSED.

 

_____
PATRICIA A. McCULLOUGH, Judge